**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER RIGGING, INC. | § | Case No. 19-30495 (MI) |
| | § | |
| Debtor. | § | |
| | § | |
| Tax I.D. No. 64-0538314 | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER SPECIALIZED | § | Case No. 19-30497 (MI) |
| TRANSPORT, LLC | § | |
| | § | |
| Debtor. | § | |
| | § | |
| Tax I.D. No. 03-0401511 | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER TRANSPORT, INC., | § | Case No. 19-30496 (MI) |
| | § | |
| Debtor. | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |
| Tax I.D. No. 64-0822096 | § | |

**DEBTORS' EMERGENCY MOTION FOR**
**ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES, AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

---

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

---

> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR FEBRUARY 6, 2019, AT 1:30 PM (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>")[1] respectfully state the following in support of this motion:

## Relief Requested

1.     The Debtors, by and through their counsel, hereby file this motion (the "<u>Motion</u>") and seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (the "<u>Interim Order</u>" and the "<u>Final Order</u>," respectively), (a) authorizing, but not directing, the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses and (ii) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, and (b) granting related relief.[2] In addition, the Debtors request that the Court schedule a final hearing 21 days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

---

[1] The Debtors' filed their voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), on January 31, 2019 (the "<u>Petition Date</u>"). A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Michael Tinsley, in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed on February 3, 2019.

[2] For the avoidance of doubt, nothing in this Motion should be construed to expand, contract, or otherwise alter the terms, conditions, requirements and budgets imposed on the Debtors under the Debtors' postpetition financing documents (the "<u>DIP Documents</u>") and any order governing the Debtors' use of cash collateral and entry into the DIP Documents (the "<u>DIP Order</u>").

4844-9694-1446.4

**Jurisdiction and Venue**

2.       The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.       The basis for the relief requested herein are sections 105(a), 363(b), and 507(a) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**The Debtors' Workforce**

5.       The Debtors' employees and independent contractors perform a wide variety of functions critical to the Debtors' operations, the administration of these chapter 11 cases, and the Debtors' successful reorganization.  Their skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability and efficiency.  In many instances, the Debtors' employees and independent contractors include highly trained personnel who are not easily replaced.  Without the continued, uninterrupted services of their employees and independent contractors, the Debtors' reorganization efforts likely will be jeopardized.

4844-9694-1446.4

6.      The vast majority of the Debtors' employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families.  Thus, the Debtors' employees will be exposed to significant financial constraints if the Debtors are not permitted to continue paying their compensation and providing benefits.  Consequently, the relief requested herein is necessary and appropriate.

7.      The Debtors employ approximately 88 individuals on a full-time basis (the "Employees").  The Debtors employ approximately 3 individuals on a part-time basis.  Approximately 66 Employees are paid on an hourly basis and approximately 25 Employees receive a salary.  Three of the Employees are represented by a union or collective bargaining unit.  In addition to the Employees, the Debtors also retain from time to time specialized individuals as independent contractors (the "Independent Contractors") to complete discrete projects.  The Debtors currently retain approximately one Independent Contractor, although this number fluctuates based on the Debtors' specific needs at any given time.  The Independent Contractors are a critical supplement to the efforts of the Debtors' Employees.

## Employee Compensation and Benefits

8.      To minimize the personal hardship the Employees would suffer if employee obligations are not paid when due or as expected, the Debtors seek authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, expense reimbursements, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, flex spending account contributions, taxes, and 401(k) contributions), health insurance, retirement benefits, workers' compensation benefits, paid time off, other paid leave, unpaid leave, life and accidental death and dismemberment insurance, short- and long-term disability coverage,

4

severance, relocation assistance, certain grandfathered benefits, and other benefits that the Debtors have historically directly or indirectly provided to the Employees in the ordinary course of business (collectively, the "Employee Compensation and Benefits").   In addition, the Debtors also are seeking to pay all costs incident to the Employee Compensation and Benefits.

9.     Subject to the Court's approval of the relief requested herein, the Debtors intend to continue their prepetition Employee Compensation and Benefits programs in the ordinary course of business.  Out of an abundance of caution, the Debtors, in consultation with the DIP Agent (as defined in the DIP Order), request the right to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law.

4844-9694-1446.4

10.     The Debtors estimate that they owe prepetition amounts of the Employee and Compensation and Benefits in approximately the following amounts:

| Relief Sought | Interim Amount | Final Amount[3] |
|---|---|---|
| **Compensation and Withholding Obligations** | | |
| Unpaid Wages | $80,550 | $80,550 |
| Unpaid Contractor Obligations | $2,000 | $2,000 |
| Withholding Obligations | $187,110.07 | $187,110.07 |
| Expense Reimbursements | $20,000 | $20,000 |
| **Employee Benefit Programs** | | |
| Health Insurance Programs | $0[4] | $0 |
| Life and AD&D Insurance | $0[5] | $0 |
| Disability Benefits | $0[6] | $0 |
| Workers' Compensation Program | $0 | $0 |
| 401(k) Plan Contributions | $16,156 | $16,156 |
| **Total** | **$305,816.07** | **$305,816.07** |

11.     The Debtors do not believe there are amounts owed to any individuals on account of the Employee Compensation and Benefits that exceed $12,850, the priority expense compensation and benefit cap set forth by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

## I.     Compensation and Withholding Obligations.

### A.     Unpaid Wages.

12.     The Debtors pay Employees' wages, salaries, and other compensation on a bi-weekly basis for salaried employees and on a weekly basis for hourly employees (collectively, the "Employee Compensation").  The Debtors pay their Employees' wage and salary obligations (the

---

[3] The final amount is an estimate of three additional weeks added to the interim based on the average of amounts owed in the ordinary course of business, however, the amounts will likely be different based on numerous variables. Importantly, a majority of the employees are hourly employees.  As a result, the Debtors cannot ascertain ahead of time exactly how many hours will be worked, and therefore paid out so far in advance.

[4] Premiums for January were paid on January 19, 2019.  February premiums are due by February 1, 2019 and will be approximately $71,000.  The Debtors seek to make these payments in the ordinary course of business.

[5] Amounts included in Health Insurance Programs premium.

[6] Amounts included in Health Insurance Programs premium.

4844-9694-1446.4

"Wages") on either a salaried or hourly basis, and pay approximately $99,769 in the aggregate on a weekly basis. Because the majority of Employees are paid in arrears, certain Employees will be owed accrued but unpaid Wages as of the Petition Date. Wages also may be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees.

13.     As of the Petition Date, the Debtors estimate they owe approximately $80,550 to Employees on account of all accrued wages, salaries, overtime, and other compensation (excluding reimbursable expenses, paid time off, and amounts related to the 401(k) plan) earned before the Petition Date (collectively, the "Unpaid Wages"), all of which will come due and owing in the first 21 days of these chapter 11 cases.[7] By this motion, the Debtors seek authority to pay their Employees any Unpaid Wages in the ordinary course of business and consistent with past practice,[8] and to continue paying Wages to their Employees on a postpetition basis in the ordinary course of the Debtors' business.

**B.      Independent Contractor Compensation.**

14.     As discussed, the Debtors rely on Independent Contractors in the ordinary course of their business to perform a wide range of services critical to the Debtors' operations, including, among other things, providing computer support services, and various other administrative functions. The Debtors rely on the support of Independent Contractors to complete discrete projects in furtherance of the Debtors' businesses and to fill short-term positions that are not economically feasible to employ on a full- or part-time basis. The Debtors believe the authority

---

[7] The Debtors estimate that prepetition checks in transit aggregate up to $33,711.95.

[8] As part of paying payroll, the Debtors incur a bank fee for administering Automated Clearing House transactions. By this Motion the Debtors also seek to continue to pay these fees.

4844-9694-1446.4

to continue paying their Independent Contractor is critical to minimizing disruption of the Debtors' continued business operations.  On average, the Debtors spend approximately $1,700.00 per month on account of Independent Contractors (the "Unpaid Contractor").  The Debtors estimate that $2,000.00 will become due within the first 21 days of these chapter 11 cases and owing for some amounts accrued prepetition.  By this motion, the Debtors seek authority to pay any prepetition Unpaid Contractor and Staffing Obligations, to the extent any is owing, and to continue paying Unpaid Contractor and Staffing Obligations on a postpetition basis in the ordinary course of the Debtors' business.

15.     The Debtors do not believe there are amounts owed to any Independent Contractors that exceed $12,850, the priority expense compensation and benefit cap set forth by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

**C.     Withholding Obligations.**

16.     During each applicable pay period, the Debtors routinely deduct certain amounts from Employees' paychecks for, among other things, garnishments, and child support.  Certain of the Deductions are forwarded to various third-party recipients.  The Deductions exclude pre tax deductions payable pursuant to certain of the Health and Welfare Programs (as defined below), which are addressed below. The Debtors deduct approximately $4,624.00 in the aggregate from Employees' paychecks on account of the Deductions on a monthly basis.

17.     The Debtors also are required by law to withhold from the Employees' Compensation amounts related to, among other things, federal, state, and local income taxes as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities.  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross   payroll,   additional   amounts   for   state   and   federal   unemployment   insurance

8

(the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes").  The Payroll Taxes generally are processed and forwarded to the appropriate federal, state, or local taxing authority at the same time Employees' payroll checks are disbursed. The Debtors remit approximately $42,836.00 in the aggregate on account of the Payroll Taxes on a weekly basis.

18.     As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") is approximately $187,110.07.00, all of which will become due and owing within the first 21 days of these chapter 11 cases.  The Debtors seek authority to pay any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course of business.

    **D.    Reimbursable Expenses.**

19.     In the ordinary course of business, the Debtors reimburse Employees for certain reasonable and customary expenses that such Employees personally incur in the scope of their employment (collectively, the "Expense Reimbursements").  Expense Reimbursements typically include expenses associated with travel, lodging, airfare, ground transportation, meals, pre-approved special entertainment (golf/sporting event, etc.) and other business-related expenses related to the discharge of an Employee's duties.  The Expense Reimbursements are incurred by Employees through the use of personal funds, and the applicable Employees may be held personally liable for any unpaid obligations even though the obligations were incurred for the Debtors' benefit.  Thus, the Debtors' inability to reimburse the Expense Reimbursements likely would impose significant hardship on Employees.

20.     On average, the Debtors pay Expense Reimbursements of approximately $2,000.00 per month in the aggregate.  However, recent liquidity issues have resulted in a larger than normal accrual of outstanding Expense Reimbursements.  Due to the timing of when Employees submit

4844-9694-1446.4

expense reimbursements, it is difficult for the Debtors to precisely estimate the amount of prepetition Expense Reimbursements outstanding as of the Petition Date.  The Debtors believe that there are is approximately $20,000.00 of accrued prepetition Expense Reimbursements.  By this Motion, the Debtors seek authority to pay the Employees' unpaid prepetition Expense Reimbursements up to $20,000.00 upon entry of the Interim Order and to continue paying prepetition and postpetition Expense Reimbursements in the ordinary course of the Debtors' business on a postpetition basis.

## II.     Employee Benefit Programs.

### A.     Health and Welfare Programs.

21.     The Debtors offer a comprehensive employee benefits package to all of their full-time Employees for medical, dental, and vision care coverage and certain other benefits (collectively, the "Health and Welfare Programs"), including:

- health care coverage;
- life insurance;
- disability benefits;
- workers' compensation; and
- the 401(k) Plan (as defined herein).

22.     By this motion the Debtors seek authority to pay any unpaid prepetition amounts due under the Health and Welfare Programs and to continue the Health and Welfare Programs in the ordinary course of business on a postpetition basis.

### 1.     Health Insurance Programs.

23.     The Debtors offer their Employees the opportunity to participate in a number of health benefit plans, including the Medical Plan, the Dental Plans, and the Vision Plan (each as defined below, and collectively, the "Health Insurance Programs").

24.     The Debtors offer medical and prescription drug benefit coverage (collectively, the "Medical Plan") to Employees, which is administered by Blue Cross Blue Shield

4844-9694-1446.4

of Mississippi ("Blue Cross").  The Debtors are not self-insured.  The Debtors have an "all-states" policy that covers most of the states required for doing business.  The Employees are responsible for the following monthly contributions under the Medical Plan as follows: Employee Only - $80.00; Employee & Spouse - $315.00; Employee & Child - $200.00; Family - $420.00.  The deductible is $2,500.00/person (Maximum 7,500.00/family = 3 family members).  Prescription coverage is provided to all Employees who enroll in the Medical Plan. The calendar year deductible per person for prescription coverage is $100.00.  The applicable drug copays (after deductible) are as follows: $15.00 – generic; $35.00 – preferred brand name; $75.00 – non-preferred brand name; and $100.00 – small group of new or experimental drugs. The Debtors pay approximately $57,183.00 per month on account of the Medical Plan, which amount includes employee deductions.  As of the Petition Date, the Debtors estimate that there are no prepetition amounts accrued and outstanding with respect to amounts owed on account of the Medical Plan, however, amounts are due post-petition for February premiums.

25.     The Debtors also provide Employees with the opportunity to purchase dental insurance (the "Dental Plans") administered by Guardian PPO ("Guardian").

26.     The Debtors also provide Employees the opportunity to purchase vision insurance (the "Vision Plan"), administered by Davis Vision/Guardian.

27.     The Debtors pay approximately $10,097.00 per month to Guardian for insurance, including the Dental Plans and Vision Plan, which amount includes employee deductions.

28.     The Debtors also provide Employees the opportunity to purchase supplemental insurance (the "Supplemental Insurance") from Aflac, Inc. ("AFLAC") for coverage of things such as cancer, accidents, and critical illness coverage.  The Debtors pay approximately $2,815.00 per month to AFLAC for the Supplemental Insurance, which amount includes employee deductions.

29.     The Debtors pay approximately $71,000.00 per month in the aggregate on account of the Health Insurance Programs, which includes employee deductions.  The Debtors believe that, as of the Petition Date, there are no accrued and outstanding amounts on account of the Health Insurance Programs, but amounts will become due for post-petition premiums.  The Debtors seek authority to pay in a manner consistent with historical practice any unpaid amounts on account of the Health Insurance Programs and to continue administering the Health Insurance Programs in the ordinary course of business and consistent with past practice.

### 2.     Insurance, Disability, and Workers' Compensation Programs.

#### a.     Life and AD&D Insurance Programs.

30.     The Debtors provide life and accidental death and dismemberment insurance coverage (the "Standard Life and AD&D Insurance") to Employees through Guardian ("Guardian"), which provides $15,000.00 Basic Term Life Coverage for all full time employees. The Basic Life coverage includes Accidental Death and Dismemberment coverage equal to one times the employee's life benefits. Employees may also purchase supplemental life insurance (the "Voluntary Life Insurance," and together with the Standard Life and AD&D Insurance, the "Life and AD&D Insurance") through Guardian.  The Debtors are fully insured through the Life and AD&D Insurance and the Debtors pay approximately $27 per year per Employee with respect to their portion of the premiums for the Life and AD&D Insurance.

31.     As of the Petition Date, the Debtors estimate that there are no prepetition amounts that have accrued and are outstanding on account of the Life and AD&D Insurance, which amounts would be included in the amount owed to Guardian as referenced above.  By this motion, the Debtors seek authority to continue administering the Life and AD&D Insurance in the ordinary course of business and consistent with past practice.

12

### b.    Disability Benefits.

32.    Employees may purchase short-term and long-term disability through Guardian, with premiums paid through payroll deductions (the "Disability Benefits"), which amounts are included in the amount owed to Guardian, as referenced above.

33.    By this motion, the Debtors seek authority to continue providing the Disability Benefits in the ordinary course of business and consistent with past practice.

### c.    Workers' Compensation Program.

34.    The Debtors maintain workers' compensation insurance for Employees at the levels required by law in the states in which the Debtors operate (collectively, the "Workers' Compensation Program").  All Employees are entitled to participate in the Workers' Compensation Program.

35.    Currently, the Debtors maintain coverage under the Workers' Compensation Program through Pennsylvania MFRS Assn. ("Pennsylvania MFRS").  The Debtors use a guaranteed cost program with no deductible but subject to year-end adjustments.  The annual cost of the Workers' Compensation Program is approximately $117,676.00.  The Debtors paid 10 percent of the annual premium within 2 days of the January 1, 2019, renewal date, with the remaining $105,908.00 financed over a 10-month period.  As of the Petition Date, the Debtors do not believe they have any outstanding amounts owed on account of the Workers' Compensation Program.

36.    Additionally, certain of the Debtors' Employees are covered by the United States Longshore and Harbor Workers Compensation Act ("USL&H") which applies to maritime employees who work on or over navigable waters.  Historically, the Debtors have made an annual contribution of $10,000 to this program.

13

37.     The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements during the pendency of these chapter 11 cases.[9]  There are currently no open claims under the Workers' Compensation Program to which this would apply.   To the extent any Employees assert claims arising under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the Employees to proceed with their claims under the Workers' Compensation Program.  This required modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

38.     Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that potentially could disrupt the reorganization process.  As of the Petition Date, the Debtors do not believe any amounts are accrued and outstanding on account of the Workers' Compensation Program.  By this motion, the Debtors request authority to continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis and to modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program to the extent applicable without further order of the Court.

>     **3.     401(k) Plan.**

39.     The Debtors provide all Employees with the ability to participate in a 401(k) defined contribution program, which is a multi-employer 401(k) profit sharing plan through

---

[9] The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.  By this motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any changes to current policy and practices that become necessary without further order of the Court.

4844-9694-1446.4

Associated General Contractors ("AGC") of America (the "401(k) Plan").  Employees generally are eligible to participate in the 401(k) Plan on the first day of the quarter following a six-month waiting period from hire date with Burkhalter Rigging, Inc.   The 401(k) Plan generally provides for pre-tax deductions of compensation up to limits set by the Internal Revenue Code, as well as for certain post-tax deductions. Each Employee's contributions under the 401(k) Plan are deducted automatically from each paycheck and transferred to a trust established under the 401(k) Plan (collectively, the "401(k) Deductions").  As of the Petition Date, the Debtors estimate that they are obligated to remit approximately $16,156.00 on account of the 401(k) Deductions.

40.     The Debtors match the Employees' 401(k) Plan contributions on a discretionary, 30 percent basis up to four percent of the Employees' compensation (collectively, the "401(k) Contributions").   The Debtors contribute approximately $45,000 per year, which includes all matching and $950 annual dues required for AGC, on account of the 401(k) Contributions.   As of the Petition Date, approximately $2,000.00 in 401(k) Contributions are accrued and outstanding.

41.     The 401(k) Plan currently is administered by AGC.   All administrative costs associated with the 401(k) Plan are deducted from the assets contributed by the Employee.

42.     Many Employees' retirement savings solely consist of the 401(k) Plan, and many Employees choose to participate in the 401(k) Plan because of the 401(k) Contributions.  As such, the Debtors believe that continuing the 401(k) Plan and the 401(k) Contributions is essential to maintaining Employee morale and protecting Employee expectations.  In addition, the Debtors believe that the 401(k) Deductions generally are held in trust by the Debtors and are not property of their estates.  Therefore, the Debtors request the authority to continue the 401(k) Plan in the ordinary   course   of   business   on   a   postpetition   basis,   including   (a) remitting   the

4844-9694-1446.4

401(k) Contributions consistent with their ordinary course practice and (b) transferring the 401(k) Deductions on a pre- or postpetition basis consistent with their ordinary course practice.

**B.      Paid Leave.**

43.      The Debtors maintain several paid leave benefit programs for Employees, providing paid leave for Holidays, Vacation, Sick Leave, and Other Paid Leave (each as defined below, and together, the "Paid Leave").

44.      In the ordinary course of business, the Debtors provide vacation days ("Vacation") to the Employees as a Paid Leave benefit.  Full-time employees receive one week of vacation after one year of continuous employment with the Debtors.  Employees may not carry over unused Vacation into the next calendar year at the end of any calendar year.  Employees who are terminated or resign are not entitled to a cash payment in lieu of their unused Vacation.  In addition, the Debtors also offer Employees six paid holidays (Christmas Day, New Year's Day, Memorial Day, July 4, Labor Day and Thanksgiving Day) throughout the year (each a "Holiday").  Generally, eligible Employees are not required to work on a designated Holiday and are paid for Holiday time plus 200 percent of their base rate of pay to the extent such Employee does work on a Holiday.

45.      The Debtors also permit their Employees to take certain other paid and unpaid leaves of absence for personal reasons, many of which are required by law.  The Debtors pay Employees for certain missed work time in the ordinary course of business for bereavement, leave provided under the Family and Medical Leave Act, voting, military leave, and all legally required leaves, including, but not limited to, crime victim and victim of domestic violence leave, volunteer firefighter leave, and leave for visits with children's teachers and school administrators, where applicable (collectively, the "Other Paid Leave").  Employees are not entitled to any separate cash payments in addition to their normal compensation for the Other Paid Leave.

4844-9694-1446.4

46.     The Debtors believe that the continuation of the Paid Leave policies in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases. Further, the policies are broad-based programs upon which all Employees have come to depend. As a result, the Debtors seek authority to allow eligible Employees to use their Paid Leave in the ordinary course of business on a postpetition basis, and, upon entry of a Final Order, to pay any Vacation accrued in the ordinary course of business.  To be clear, the Debtors anticipate that their Employees will utilize any accrued Paid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.

**Basis for Relief**

I.     **Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits.**

    A.     **Certain Employee Compensation and Benefits Are Entitled to Priority Treatment.**

47.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Employee Compensation and Benefits owed to the Employees to priority treatment.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees, and should not negatively affect recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

B.     **Payment of Certain Employee Compensation and Benefits Is Required by Law.**

48.     The Debtors seek authority to pay the applicable Withholding Obligations to the appropriate third-party entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks.  Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Further, federal and state laws require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes); *In re Chabrand*, 301 B.R. 468, 475–81 (Bankr. S.D. Tex. 2003) (same).  Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

49.     Similarly, state laws require the Debtors to maintain the Workers' Compensation Program.  If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Payment of all Workers' Compensation Program amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

4844-9694-1446.4

## II.     Payment of the Employee Compensation and Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code.

50.     Courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In doing so, these courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

51.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497).  Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor-in-possession to pay prepetition claims); *In re CEI Roofing, Inc.*, 315 B.R. at 60 (finding that "[b]ecause Congress has specifically provided that prepetition wage claims up to a certain amount per claim be elevated to priority status under § 503(1)(3)" the court's job is easier when it considers approval of such prepetition claims); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business). The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate.").

52.     Payment of Employee Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases. The majority of the Employees and Independent Contractor rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees and Independent Contractors will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits. Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

53.     Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' businesses, and the Debtors believe that absent the payment of the Employee

20

Compensation and Benefits owed to the Employees and Independent Contractors, the Debtors may experience workforce turnover and instability at this critical time in these chapter 11 cases.  The lifting, rigging and transportation industry is a highly specialized business that requires unique technical expertise.  The Debtors believe that without these payments, the workforce may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees and Independent Contractor may face.  Such individuals may then elect to seek alternative employment opportunities.  Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—which efforts may not be successful given the overhang of these chapter 11 cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their businesses in these chapter 11 cases.

54.     Indeed, bankruptcy courts in the Fifth Circuit have recognized the importance of satisfying employee obligations in cases requesting relief similar to that requested herein. *See, e.g.*, *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Oct. 10, 2017) (authorizing the debtors to continue the employee compensation and benefits programs on a postpetition basis); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. June 30, 2016) (same); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 13, 2016) (same); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 13, 2016) (same); *In re Midstates Petrol.*

4844-9694-1446.4

*Co.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (same).[10]   Accordingly, the Debtors

respectfully request that the Court authorize the Debtors to pay and continue the Employee

Compensation and Benefits in the ordinary course of business and consistent with past practice on

a final basis from the outset of these cases.

### III.   A Limited Waiver of the Automatic Stay for Workers' Compensation Program Is Appropriate in this Case.

55.    Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of
> process, of a judicial, administrative, or other action or proceeding against the
> debtor that was or could have been commenced before the commencement of the
> case under this title, or to recover a claim against the debtor that arose before the
> commencement of the case under this title . . . .

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to

request a modification or termination of the automatic stay for "cause."  11 U.S.C. § 362(d)(1).

56.    The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to

permit their Employees to proceed with their claims against the Workers' Compensation Program

in the appropriate judicial or administrative forum.  The Debtors believe that cause exists to modify

the automatic stay because staying the Employee's workers' compensation claims could have a

detrimental effect on the financial well-being and morale of the Employees and lead to the

departure of certain Employees who are critical at this juncture.  Such departures could cause a

severe disruption in the Debtors' business to the detriment of all stakeholders.  In addition, as noted

above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit

the Debtors from operating in those states.  Accordingly, the Debtors request a limited waiver of

---

[10]Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.
 Copies of these orders are available upon request to the Debtors' proposed counsel.

the automatic stay for purposes of allowing the Debtors' Workers' Compensation Program to proceed.

IV.   **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

57.   The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and postpetition financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**Emergency Consideration**

58.   Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations as this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors submit that they have

23

satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

59.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

60.     Nothing contained herein is intended or shall be construed as:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

### Notice

61.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) counsel for Metropolitan Partners Group Administration LLC, the administrative agent under the Debtors' senior loan and security agreement; (f) the state attorneys general for states in which the Debtors conduct business; and (g)

any party that has requested notice pursuant to Bankruptcy Rule 2002.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

62.     No prior request for the relief sought in this motion has been made to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: February 2, 2019

Respectfully Submitted,

*/s/ Marcus A. Helt*

Marcus A. Helt (TX 24052187)
**FOLEY GARDERE**
Foley Lardner LLP
2021 McKinney Avenue
Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: mhelt@foley.com

-and-

Jack G. Haake (*pro hac pending*)
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C.  20007-5109
Telephone: (202) 295-4085
Facsimile: (202) 672-5399
Email: jhaake@foley.com

***Proposed Counsel for the Debtors and Debtors in Possession***

**Certificate of Service**

I certify that on February 2, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marcus A. Helt*
Marcus A. Helt

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER RIGGING, INC., *et al.*,[1] | § | Case No. 19-30495 (MI) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | **Re: Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY
PREPETITION WAGES, SALARIES, OTHER COMPENSATION,
AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE
BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses and (ii) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, (b) granting related relief, and (c) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Burkhalter Rigging, Inc. (8314); Burkhalter Specialized Transport, LLC (1511); Burkhalter Transport, Inc. (2096). The address for all of the Debtors is 2193 Highway 45 South, Columbus, MS 39701.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2019, at__:__ _.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2019, and shall be served on:  (a) proposed counsel to the Debtors, Foley Gardere, Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201, Attn.:  Marcus A. Helt; (b) counsel to any statutory committee appointed in these cases; (c) the Office of the U.S. Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002; and (d) counsel to the DIP Agent, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn: Brett Lawrence and Daniel Ginsberg and Haynes and Boone, LLP, 1221 McKinney, Suite 2100, Houston, Texas 77010, Attn: Kelli S. Norfleet.  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

2

3.    The Debtors, in consultation with the DIP Agent (as defined in the DIP Order), are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law and in compliance with the DIP Documents.  For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Order should be construed as authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

4.    The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Employee Compensation and Benefits.

| Relief Sought | Interim Amount |
|---|---|
| **Compensation and Withholding Obligations** | |
| Unpaid Wages | $80,550 |
| Unpaid Contractor Obligations | $2,000 |
| Withholding Obligations | $187,110.07 |
| Expense Reimbursements | $20,000 |
| **Employee Benefit Programs** | |
| Health Insurance Programs | $0[3] |
| Life and AD&D Insurance | $0[4] |
| Disability Benefits | $0[5] |
| Workers' Compensation Program | $0 |
| 401(k) Plan Contributions | $16,156 |
| **Total** | **$305,816.07** |

5.    Nothing herein shall be deemed to authorize the payment of any amounts which violates or implicates section 503(c) of the Bankruptcy Code, *provided* that nothing herein shall

---

[3] Premiums for January were paid on January 19, 2019.  February premiums are due by February 1, 2019 and will be approximately $71,000.  The Debtors seek to make these payments in the ordinary course of business.

[4] Amounts included in Health Insurance Programs premium.

[5] Amounts included in Health Insurance Programs premium.

prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6.      Pursuant to section 362(d) of the Bankruptcy Code: (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program without further order of the Court, and the Debtors are authorized to pay all prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

7.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

8.      Notwithstanding anything to the contrary contained herein, nothing in this Order

4

authorizes the use of cash collateral or debtor-in-possession financing. The relief granted in this Order and any payment to be made hereunder shall be subject to the terms of the DIP Order (including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms of such DIP Order, and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

10.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits programs.

11.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

5

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
|  | § |  |
| BURKHALTER RIGGING, INC., *et al.*,[1] | § | Case No. 19-30495 (MI) |
|  | § |  |
| Debtors. | § | (Joint Administration Requested) |
|  | § | **Re: Docket No. ___** |

**FINAL ORDER (I) AUTHORIZING THE**
**DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to

(i) pay prepetition wages, salaries, other compensation, and reimbursable expenses and

(ii) continue employee benefits programs in the ordinary course of business, including payment of

certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set

forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over

this matter pursuant to 28 U.S.C. §1334; this Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with

Article III of the United States Constitution; and this Court having found that venue of this

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Burkhalter Rigging, Inc. (8314); Burkhalter Specialized Transport, LLC (1511); Burkhalter Transport, Inc. (2096).  The address for all of the Debtors is 2193 Highway 45 South, Columbus, MS 39701.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors, in consultation with the DIP Agent (as defined in the DIP Order), are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law and in compliance with the DIP Documents. For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Order should be construed as authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

3. The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Employee Compensation and Benefits.

4. Nothing herein shall be deemed to authorize the payment of any amounts which violates or implicates section 503(c) of the Bankruptcy Code, *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

5.       Pursuant to section 362(d) of the Bankruptcy Code: (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program without further order of the Court, and the Debtors are authorized to pay all prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

6.       Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

7.       Notwithstanding anything to the contrary contained herein, nothing in this Order authorizes the use of cash collateral or debtor-in-possession financing.  The relief granted in this Order and any payment to be made hereunder shall be subject to the terms of the DIP Order

(including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms of such DIP Order, and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

8.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

9.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits programs.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE