## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER RIGGING, INC. | § | Case No. 19-30495 (MI) |
| | § | |
| Debtor. | § | |
| | § | |
| Tax I.D. No. 64-0538314 | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER SPECIALIZED | § | Case No. 19-30497 (MI) |
| TRANSPORT, LLC | § | |
| | § | |
| Debtor. | § | |
| | § | |
| Tax I.D. No. 03-0401511 | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER TRANSPORT, INC., | § | Case No. 19-30496 (MI) |
| | § | |
| Debtor. | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |
| Tax I.D. No. 64-0822096 | § | |

## DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN STRETTO AS CLAIMS, NOTICING, AND SOLICITATION AGENT, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A**

1

> **HEARING WILL BE HELD ON THIS MATTER FOR FEBRUARY 6, 2019, AT 1:30 PM (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")[1] respectfully state the following in support of this application (the "Application"):

### Relief Requested

1.      The Debtors seek entry of an order, to appoint Stretto ("Stretto")[2] as the claims, noticing, and solicitation agent ("Claims and Noticing Agent") in these chapter 11 cases, effective *nunc pro tunc* to the Petition Date (as defined below).  Specifically, the Debtors request entry of an order appointing Stretto as the Claims and Noticing Agent to, among other tasks, (a) serve as the noticing agent to mail notices to the estates' creditors, and other parties in interest, (b) provide computerized claims, objection, and solicitation and balloting—related services, and (c) assist the Debtors in claim and ballot processing and other administrative services with respect to these chapter 11 cases, in each case, pursuant to the terms of the services agreement dated December 28, 2018 (the "Services Agreement"), between the Debtors and Stretto.  A copy of which agreement is attached as **Exhibit A**.[3]

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended*

---

[1]   The Debtors' filed their voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on January 31, 2019 (the "Petition Date").  A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Michael Tinsley, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed on February 3, 2019.

[2]   Stretto is the trade name of Bankruptcy Management Solutions, Inc. and its subsidiaries.

[3]   To the extent that there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

*Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The bases for the relief requested herein are sections 105, 327, 503, and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Bankruptcy Rules 2002(f), 2014(a), 2016, and 6003, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### Stretto's Qualifications

5.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as debtors' legal counsel or as official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.

6.     The Debtors' selection of Stretto as their proposed Claims and Noticing Agent is appropriate under the circumstances and in the best interests of the Debtors' estates.  Moreover, the Debtors submit that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise in other complex chapter 11 cases.

7.     Although the Debtors have not yet filed their schedules of assets liabilities, they anticipate that hundreds of persons and entities may file proofs of claim in these chapter 11 cases. In light of the significant number of anticipated claimants and other parties in interest in these chapter 11 cases, as well as the need for the Debtors' limited personnel to focus on running the business, the Debtors submit that the appointment of Stretto as the Claims and Noticing Agent will provide the most effective and efficient means of–and relieve the administrative burden on the Debtors and/or the Office of the Clerk of the Bankruptcy Court (the "Clerk") of–noticing, administering certain claim-related tasks, and soliciting and tabulating votes, and, therefore, is in the best interests of both the Debtors' estates and their stakeholders.

## Services to be Provided

8.     This Application pertains to the work to be performed by Stretto under section 327(a) of the Bankruptcy Code.  Under the Services Agreement, Stretto will perform the following services as the Claims and Noticing Agent at the request of the Debtors or the Clerk, as applicable:

(a)     Stretto agrees to provide the Client with consulting services including, but not limited to, noticing, claims management and related reconciliation, solicitation, balloting, tabulation, disbursements and any other services on an as-needed basis, agreed upon by the Client and/or otherwise required by applicable law, government regulations or Court Order/rules (collectively, the "Services").  The Parties agree the Services are to be charged in accordance with the related fee structure (the "Fee Structure").

(b)     Stretto agrees to provide the following to Client during the term of the Services Agreement: (i) Stretto's standard data reports as well as consulting and programming support for Client-requested reports, (ii) support/training for Stretto's proprietary database and related software, (iii) computer program modifications, and/or (iv) other features/services referenced in the Fee Structure.

(c)     Upon request from the Client, Stretto may provide (i) confidential, online workspaces or virtual data rooms and publish certain documents thereto (which shall not be deemed a violation of confidentially provisions contained in the Services Agreement) and/or (ii) creditor communications materials to be utilized by Stretto employees.

(d)     Services will be provided by Stretto when (i) specifically requested by the Client or (ii) required by applicable law, government regulations or court order/rules. Services are deemed delivered and accepted by the Client when provided by Stretto.

(e)     Client agrees that none of the Services provided by Stretto contain legal advice or opinion, and neither Stretto nor its personnel shall be or are deemed to practice law thereunder.

9.      Stretto shall maintain the official claims register (the "Official Claims Register") in these chapter 11 cases.  Furthermore, any party that files a proof of claim or proof of interest, as applicable, whether electronically or otherwise, shall file such proof of claim or proof of interest with the with Stretto.  The Official Claims Register, as maintained by Stretto, shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Stretto.  Stretto can and will coordinate with the Court to ensure a seamless transition of data and claim-filing experience for creditors.

**Professional Compensation**

10.     The Debtors respectfully request that the undisputed fees and expenses incurred by Stretto in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Services Agreement without further application to or order of the Court.  Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, the administrative agent for the Debtors' proposed postpetition secured debtor-in-possession financing, counsel for the lenders under the proposed debtor-in-possession financing,

counsel for any official committee appointed in these chapter 11 cases, and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.  Notwithstanding any provision to the contrary in the Services Agreement, the Court shall retain exclusive jurisdiction of any dispute related to the Services Agreement.

11.     Prior to the Petition date, the Debtors provided Stretto a retainer in the amount of $10,000.  Stretto seeks to first apply the retainer to all prepetition invoices, and thereafter, to seek to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

12.     Furthermore, notwithstanding anything to the contrary in the Services Agreement, Stretto shall not be entitled to indemnification by the Debtors or their estates without further order of the Court after notice and a hearing.

### Disinterestedness

13.     Stretto has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information and belief, and except as disclosed in the *Declaration of Travis Vandell in Support of the Debtors'* **Emergency** *Application for Entry of an Order Authorizing the Debtors to Employ and Retain Stretto, as Claims, Noticing, and Solicitation Agent, Effective* Nunc Pro Tunc *to the Petition Date* (the "Vandell Declaration"), a copy of which is annexed hereto as **Exhibit B**, has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

14.     To the best of the Debtors' knowledge, Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  As set forth in the Vandell Declaration:

(a)     Stretto, its members, and employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders, or employees of the Debtors;

(b)     Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)     By accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)     In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e)     Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)     In its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person; and

(g)     None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

### *Nunc Pro Tunc* Relief is Appropriate

15.     At the Debtors' request, Stretto has acted as the Claims and Noticing Agent since the Petition Date with the understanding that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that Stretto may be compensated for its services prior to entry of an order approving Stretto's retention.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, because

Stretto has provided and will continue to provide valuable services to the Debtors' estates in the interim period.[4]

16.     Based on the foregoing, the Debtors respectfully submit that they have satisfied the requirements of the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c) and the Bankruptcy Local Rules.  Accordingly, the Debtors respectfully request entry of an order authorizing the Debtors to retain and employ Stretto to act as noticing, claims, and balloting agent for the Debtors, effective *nunc pro tunc* to the Petition Date.

### **Emergency Consideration**

17.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Application pursuant to Bankruptcy Rule 6003, which empowers a court grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Application, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases could severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Application on an emergency basis.

---

[4]     Pursuant to Bankruptcy Local Rule 2014-1(b)(1), an application for approval of employment made within 30 days of the commencement of the provisions of services is deemed contemporaneous.  Nonetheless, the Debtors are requesting *nunc pro tunc* approval in an abundance of caution.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

18.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

19.     The Debtors will provide notice of this motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) counsel for Metropolitan Partners Group Administration LLC, the administrative agent under the Debtors' senior loan and security agreement; (f) the state attorneys general for states in which the Debtors conduct business; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.

20.     The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

21.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: February 2, 2019

Respectfully Submitted,

*/s/ Marcus A. Helt*

Marcus A. Helt (TX 24052187)
**FOLEY GARDERE**
Foley Lardner LLP
2021 McKinney Avenue
Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: mhelt@foley.com

-and-

Jack G. Haake (*pro hac pending*)
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C.  20007-5109
Telephone: (202) 295-4085
Facsimile: (202) 672-5399
Email: jhaake@foley.com

***Proposed Counsel for the Debtors and Debtors in Possession***

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on February 2, 2019, a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in these cases.

<u>/s/ Marcus A. Helt</u>

Marcus A. Helt

# EXHIBIT A



## Services Agreement

This agreement for services (the "Services Agreement") is effective as of December 28, 2018 by and between Burkhalter Rigging, Inc. (together with its affiliates and subsidiaries, the "Client") and Bankruptcy Management Solutions, Inc. d/b/a Stretto ("Stretto") (together with the Client, the "Parties").

In consideration of the mutual covenants contained herein, the Parties agree as follows:

1. **SERVICES**

   a) Stretto agrees to provide the Client with consulting services including, but not limited to, noticing, claims management and related reconciliation, solicitation, balloting, tabulation, disbursements and any other services on an as-needed basis, agreed upon by the Client and/or otherwise required by applicable law, government regulations or Court Order/rules (collectively, the "Services"). The Parties agree the Services are to be charged in accordance with the related fee structure (the "Fee Structure").

   b) Stretto agrees to provide the following to Client during the term of the Services Agreement: (i) Stretto's standard data reports as well as consulting and programming support for Client-requested reports, (ii) support/training for Stretto's proprietary database and related software, (iii) computer program modifications, and/or (iv) other features/services referenced in the Fee Structure.

   c) Upon request from the Client, Stretto may provide (i) confidential, online workspaces or virtual data rooms and publish certain documents thereto (which shall not be deemed a violation of confidentiality provisions contained in the Services Agreement) and/or (ii) creditor communications materials to be utilized by Stretto employees.

   d) Services will be provided by Stretto when (i) specifically requested by the Client or (ii) required by applicable law, government regulations or court order/rules. Services are deemed delivered and accepted by the Client when provided by Stretto.

   e) Client agrees that none of the Services provided by Stretto contain legal advice or opinion, and neither Stretto nor its personnel shall be or are deemed to practice law thereunder.

2. **TERM AND RETENTION**

   a) This Services Agreement is effective as of the date of its acceptance by both the Client and Stretto; however, Stretto acknowledges that an Order approving Stretto's engagement may be required in order to be engaged in Client's bankruptcy proceedings.

   b) In the event that the Client files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), Client agrees to, by and through



its legal counsel, file one or more applications (each, an "Application") with the Bankruptcy Court seeking entry of an order pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") approving the Services Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the Application and the Section 156(c) Order shall be reasonably acceptable to Stretto. *Any discrepancies between this Services Agreement, the Application and/or the Section 156(c) Order shall be controlled by the Section 156(c) Order.*

c) The Parties agree that all fees and expenses due under the Services Agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s).

d) If any Client chapter 11 case converts to a case under chapter 7 of the United States Bankruptcy Code, Stretto will continue to be paid for its services in accordance with Section 156(c) under the terms of the Services Agreement.

**3.  CHARGES**

a) For any and all Services and materials furnished/provided by Stretto under this Services Agreement, the Client shall pay the fees, charges and costs as detailed in the Fee Structure.  Stretto will bill the client on a monthly basis; all invoices are due upon receipt.  *However*, where total fees and expenses are expected to exceed $10,000.00 in any single month, Stretto may require advance payment from the Client which is due and payable upon demand and prior to the performance of services hereunder.

b) If any outstanding amount owed to Stretto in accordance with the Services Agreement is unpaid as of thirty (30) days from the receipt of the invoice, the Client agrees to pay a late charge, calculated as one percent (1.00%) of the total amount unpaid every thirty (30) days.  In the event of a dispute regarding invoice amounts, the Client shall provide written notice to Stretto with ten (10) days of receipt of the invoice by the Client.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any disputed amount.  Unless otherwise agreed to in writing, fees for print notice and media publications as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

c) Stretto reserves the right to make reasonable increases to unit prices, charges and professional service rates set forth in the Fee Structure on an annual basis effective January 1, 2019 and January 1st of each calendar year thereafter. Should such increases exceed 10% from the prior year's level, Stretto will provide forty-five (45) days' prior written notice to the Client of such proposed increases.

d) Client agrees to pay Stretto for all materials necessary (other than computer hardware and software) for performance under the Services Agreement and any reasonable out-of-pocket expenses including, without limitation, transportation, long-distance communications, printing, photocopying, fax, postage and related items.

e) Where Client requires services that are unusual or beyond normal business practices of Stretto, or are otherwise not provided/contemplated in the Fee Structure, the cost of such services shall be charged at a competitive rate.



f) Client shall pay or reimburse all taxes applicable to services performed under this Services Agreement and, specifically, taxes based on disbursements made on behalf of the Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Stretto.

g) Client shall pay to Stretto for any actual charges (including fees, costs and expenses as set forth in the Fee Structure) relating to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long-distance phone calls and/or travel expenses/fees at the rates set forth in the Fee Structure.

h) Client shall pay Stretto a retainer in the amount of $10,000 (the "Retainer") which may be held by Stretto as security for the Company's payment obligations pursuant to the Services Agreement. The Retainer is due upon execution of the Services Agreement. Stretto shall be entitled to hold the Retainer until termination of the Services Agreement. Following termination of the Services Agreement, Stretto shall return to the Client any amount of the Retainer that remains following application of the Retainer to any outstanding and unpaid invoice amounts.

i) In the event of a termination in accordance with Section IV hereof, Client shall be liable for all amounts accrued and/or due and owing to Stretto under the Services Agreement.

j) Payments to Stretto, under the guise and terms of the Services Agreement for services rendered, may be remitted by Client using either (or both) of the following methods:

    a. <u>Wire Transmission</u>
       Bank Name – Pacific Western Bank
       Bank Address – 110 West A Street, San Diego, CA 92101
       Account No. – 1000681781
       Account Name – Stretto
       ABA – 122238200

    b. <u>Check</u>
       Stretto
       410 Exchange, Suite 100
       Irvine, CA 92602



### 4. TERMINATION AND SUSPENSION OF SERVICES

a) This Services Agreement shall remain valid and in effect until terminated by either party (i) upon thirty (30) days' prior written notice to the other party or (ii) immediately upon written notice for Cause.  As used herein, "Cause" shall mean (i) gross negligence or willful misconduct of/by Stretto that causes serious or material harm to the Client's reorganization efforts under chapter 11 of the Bankruptcy Code, (ii) the failure of the Client to pay Stretto invoices for more than sixty (60) days from the issuance date of the invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by Stretto where Stretto believes it will not reasonably be paid.

b) In the event the Services Agreement be terminated, regardless of the reason for such termination, Stretto shall cooperate and work in good faith to transfer all information in its control in connection with the Services Agreement to the Client, its designee and/or the Bankruptcy Court.  Client agrees to pay Stretto for reasonable expenses incurred in doing so.

c) Stretto shall be entitled to an administrative claim fees and expenses outstanding at the time of termination (subject to approval by the Bankruptcy Court in the event of an unresolved dispute).

### 5. CONFIDENTIALITY

Data provided to Stretto during the course of term of the Services Agreement by Client or its retained professionals (the "Client Data") shall be maintained confidentially by Stretto in the same manner and at the same level as Stretto safeguards data relating to its own business; provided, *however*, that if Client Data is publicly available, was already in Stretto's possession or known to it, was required to be disclosed by law, was independently developed by Stretto with or without reference to any Client Data, or was rightfully obtained by Stretto from a third party, Stretto shall bear no fault/liability for public disclosure of such data.  Client agrees that Stretto shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Stretto in performance of the Services Agreement.

### 6. DATA INTEGRITY

a) Client is responsible for the integrity and accuracy of all programs or Client Data it provides or gives access to Stretto during the term of the Services Agreement and for the output resulting from such.

b) Client shall institute and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data it provides or gives access to Stretto.  Client agrees, represents and warrants to Stretto that, prior to delivery of any programs or Client Data to Stretto, Client warrants that it has full and legal right to transfer/deliver Client Data to Stretto.  Client has obtained binding consents, permits, licenses and approval from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Stretto to use all Client Data delivered thereto

in connection with the Services Agreement.  Stretto shall not be liable for any liability or obligation with respect to Client Data prior to Stretto's receipt, including without limitation, any liability arising during the delivery of Client Data to Stretto. Rather, Client accepts full responsibility of such delivery of Client Data to Stretto.

c) Client responsibility discussed/assigned herein extends to all data/information for and relating to the preparation of Schedules of Assets & Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements").  Stretto does not verify information provided by the Client relating to the preparation of Schedules and/or Statements.  Schedules and Statements filed by or on behalf of the Client are reviewed and ultimately approved by the Client.

**7.  RIGHT OF OWNERSHIP**

a) The Parties understand and agree that any and all software programs and other materials furnished by Stretto in accordance with the Services Agreement and/or developed during the terms of this Services Agreement are sole property of Stretto.

b) The Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished/provided under the Services Agreement.

**8.  SYSTEM IMPROVEMENTS**

As part of its ongoing efforts to better client services/offering, Stretto is continually improving/bettering its proprietary database and related reports.  Stretto therefore reserves the right to make changes in operating procedures/systems, programming languages, application programs and time-period accessibility so long as such changes do not materially interfere with ongoing services provided to Client in accordance with the Services Agreement and/or Client's Chapter 11 Filing.

**9.  JURISDICTION**

The Services Agreement is subject to approval by the Bankruptcy Court and shall retain jurisdiction over all matters relating thereto.

**10. GOVERNING LAW**

The Services Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of law provisions).

**11. ATTORNEY FEES**

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance of or interpret the provisions of the Services Agreement, the parties agree to reimburse the prevailing party's reasonable attorney fees, court costs and other related expenses.



**12. SEVERABILITY**

All clauses and covenants set forth in the Services Agreement are severable.  In the event any of them be held invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and the Services Agreement will be interpreted as if such invalid clauses or covenants were not contained therein.

**13. ASSIGNMENT**

The Services Agreement and the rights and obligations of Stretto and the Client hereunder shall bind and inure to the benefit or any successors or assigns thereto.

**14. NON-SOLICITATION**

Client agrees to not directly or indirectly solicit for employment, employ or otherwise retain employees of Stretto during the term of the Services Agreement and for a period of twelve (12) months following termination of the Services Agreement unless Stretto provides prior written consent to such solicitation or retention.

**15. FORCE MAJEURE**

Except for Client's obligation to pay fees, expenses and charges hereunder when due, should performance by the Parties of any of obligations contemplated under the Services Agreement be substantially prevented by any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war-like conditions, or by reason of any other matter beyond the Parties' respective and reasonable control, then such performance shall be excused and the Services Agreement shall be deemed suspended during such disturbance and for a reasonable time thereafter.

**16. COUNTERPARTS**

The Services Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together will constitute one and same agreement. The Services Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

**17. ENTIRE AGREEMENT**

The Parties agree that the Services Agreement is the complete and exclusive statement of the agreement between the Parties.  The Services Agreement is intended to supersede all proposals or prior agreements, oral or written, and all other communications between the Parties relating to thereto.



**18. NOTICE**

Notices to be given or submitted by either party to the other, pursuant to the Services Agreement, shall be sufficiently given if made in writing and sent by hand-delivery, overnight or certified mail (postage pre-paid) or via electronic transmission and addressed as follows:

IF TO STRETTO:
Stretto
410 Exchange, Ste 100
Irvine, CA 92606
Attn: Eric Kurtzman
Tel: 714.716.1841
Email: eric.kurtzman@stretto.com

IF TO CLIENT:                                    WITH A COPY TO:

IN WITNESS HEREOF, the parties have executed the Services Agreement as of the day and year set forth below.

STRETTO

Name: Travis K. Vandell
Title:   Managing Director
Date:   January 30, 2019

CLIENT

Name: Brooke Burkhalter
Title:   President
Date:

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| BURKHALTER RIGGING, INC. | § § | Case No. 19-30495 (MI) |
| Debtor. | § § § | |
| Tax I.D. No. 64-0538314 | § | |
| In re: | § § | Chapter 11 |
| BURKHALTER SPECIALIZED TRANSPORT, LLC | § § § | Case No. 19-30497 (MI) |
| Debtor. | § § § | |
| Tax I.D. No. 03-0401511 | § | |
| In re: | § § | Chapter 11 |
| BURKHALTER TRANSPORT, INC., | § § § | Case No. 19-30496 (MI) |
| Debtor. | § § | (Joint Administration Requested) (Emergency Hearing Requested) |
| Tax I.D. No. 64-0822096 | § | |

**DECLARATION OF TRAVIS VANDELL IN SUPPORT OF THE DEBTORS'**
**EMERGENCY APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**DEBTORS TO EMPLOY AND RETAIN STRETTO, AS CLAIMS, NOTICING, AND**
**SOLICITATION AGENT, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Travis Vandell, hereby declares, under penalty of perjury, as follows:

1.     I am Managing Director with Stretto ("Stretto"),[1] and I am authorized to make and

submit this declaration on behalf of Stretto.  This declaration is submitted in support of the

---

[1] Stretto is the trade name of Bankruptcy Management Services, Inc. and its subsidiaries.

Application[2] filed contemporaneously herewith.  The statements contained herein are based upon personal knowledge.

2.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform at the request of the Clerk the noticing and claims services specified in the Application and the Services Agreement.  In addition, at the Debtors' request, Stretto will perform such other claims, noticing, and solicitation services specified in the Application.

3.      Stretto represents, among other things, the following:

a.      Stretto, its members, and employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders, or employees of the Debtors;

b.      I am not related or connected to and, to the best of my knowledge, no other professional of Stretto is related to or connected to any United States Bankruptcy Judge for the Southern District of Texas or the United States Trustee or to any employee in the offices thereof;

c.      Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

d.      by accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government;

e.      in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

f.      Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

g.      in its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

h.      Stretto shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers; and

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in the Application.

2

i.      none of the services provided by Stretto as Claims and Noticing Agent shall be at the expense of the Clerk's Office.

4.      In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these cases.  The list of Potential Parties in Interest was provided by the Debtors and included the Debtors, non-debtor affiliates, shareholders, current and former directors and officers of the Debtors, pre-petition lenders, top 20 unsecured creditors, lessors, utility vendors, and other parties.  The results of the conflict check were compiled and reviewed by employees of Stretto, under my supervision.  At this time, Stretto is not aware of any relationship which would present a disqualifying conflict of interest.  Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to promptly file a supplemental declaration.

5.      7.      To the best of my knowledge based solely on the information provided to me by the Debtors and except as disclosed herein, neither Stretto nor any of its personnel holds or represents an interest materially adverse to the Debtors' estates nor has a material connection to the Debtors, their creditors, or related parties with respect to any matter for which Stretto will be employed.  Stretto may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Stretto serves or has served as claims and noticing agent for another chapter 11 debtor.  However, to the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.

6.      Stretto has, and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, in matters unrelated to these chapter 11 cases, Stretto and its personnel may have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that

3

may be involved in these chapter 11 cases.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors

7.      Stretto and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors.  Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent Stretto or its personnel in their individual capacities are unrelated to these chapter 11 cases.

8.      Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

9.      In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point Capital LLC ("**Stone Point**").  Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut.  The firm has raised and managed seven private equity funds – the Trident Funds – with aggregate committed capital of approximately $19 billion.  Stone Point targets investments in the global financial services industry, including investments in companies that provide outsourced services to financial institutions, banks and depository institutions, asset management firms, insurance and reinsurance companies, insurance distribution and other insurance-related businesses, specialty lending and other credit opportunities, mortgage services companies and employee benefits and healthcare companies.

4

10.     The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.  However, neither the Trident VI Funds nor Stone Point have been identified on the parties in interest list in these chapter 11 cases as of the date hereof.

11.     Stretto has searched the names of the Debtors and the names of the potential parties in interest provided by the Debtors against Stone Point, its funds, and their respective investments as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department.  Based solely on the foregoing search, Stretto has determined, to the best of its knowledge, that there are no material connections that require disclosure.  To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors, Stretto will promptly file a supplemental disclosure.  Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

12.     From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge.  Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security.  Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular

5

Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

13.     From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company which may be one of the Debtors or their affiliates.  Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained.  Subject to the foregoing, upon information and belief, and upon reasonable inquiry, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

14.     In performing the services of Claims and Noticing Agent, Stretto will charge the Debtors the rates set forth in the Services Agreement.

15.     Prior to the Petition Date, the Debtors provided Stretto a retainer in the amount of $10,000.00.  After deducting prepetition fees and expenses, Stretto seeks to first apply the retainer to all prepetition invoices, and thereafter, to seek to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

16.     Stretto will comply with all requests of the Clerk's Office, including the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

17.     Based on the foregoing, I believe that Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of the knowledge and

6

belief, neither Stretto nor any of its employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Stretto is to be employed.

18.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  February 2, 2019

                                                STRETTO

                                                */s/ Travis Vandell*
                                                Travis Vandell
                                                Managing Director

7