UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
02/06/2019

| | |
|---|---|
| In re:<br><br>BURKHALTER RIGGING, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-30495 (MI)<br><br>(Jointly Administered)<br><br>Related to Docket No. [ 42 ] |

**Emergency Cash Collateral Order**

Upon the oral motion (the "Motion"), of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), for entry of an emergency cash collateral order (this "Order"), pursuant to sections 105, 361, 363(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 4001-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), authorizing the Debtors to utilize cash collateral of Metropolitan Partners Group Administration LLC, as administrative agent and collateral agent (in such capacities, the "Agent") and the Debtors' prepetition lenders (the "Lenders" and, together with the Agent, the "Prepetition Secured Parties") on the terms and conditions set forth in this Order on an as needed basis.

This Court having found that due and proper notice of the Motion and Hearing was provided by the Debtors under the circumstances in accordance with Bankruptcy Rules 2002, 4001 and 9014 and Local Rules 2002-1, 4001-1, and 9013-1, and having held the Hearing on February

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Burkhalter Rigging, Inc. (8314); Burkhalter Specialized Transport, LLC (1511); Burkhalter Transport, Inc. (2096). The address for all of the Debtors is 16525 FM 521 Rosharon, TX 77583.

6, 2019 after considering all the pleadings, motions, and other papers filed with this Court and the evidence proffered or adduced on the record at the Hearing; and this Court having overruled all unresolved objections to the interim relief requested in the Motion; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors, and their estates, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases and after due deliberation and consideration and for good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

A. *Jurisdiction and Venue*. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors and the Prepetition Secured Parties consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and 9014.

B. *Debtors' Stipulations*. In requesting the use of cash collateral, and in exchange for and as a material inducement to the Lenders to agree thereto, the Debtors hereby admit, acknowledge, agree and stipulate that:

(i) *Prepetition Senior Loan Agreement*. Pursuant to (a) that certain Loan and Security Agreement, dated as of January 8, 2018 (as amended, supplemented, amended and restated or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Credit Agreement"), by and among Rigging, Transport and Specialized Transport, as borrowers thereunder, the Agent, and the Lenders, and (b) the other Loan Documents (each as defined in the Prepetition Credit Agreement and, together with the Prepetition Credit Agreement, the "Prepetition Senior Loan Documents"), the Prepetition Senior Lenders provided a $20.0 million secured loan to and for the benefit of the Debtors. Pursuant to the Prepetition Senior Loan Documents, the Debtors granted a security interest in all "Collateral" under and as defined in the Prepetition Senior Loan Documents;

(ii) *Prepetition Collateral.* To secure the Prepetition Secured Obligations,[2] the Debtors granted to the Prepetition Senior Loan Agent, for its benefit and the benefit of the Prepetition Senior Lenders, a security interest in and lien upon (the "Prepetition Liens") all "Collateral" under and as defined in the Prepetition Senior Loan Documents (the "Prepetition Collateral");

(iii) All of the Debtors' cash, including any cash in deposit accounts of the Debtors and all other property constituting "Cash Collateral" (as defined in section 363(a) of the Bankruptcy Code), wherever located, constitutes cash collateral of the Prepetition Secured Parties; and

(iv) The Debtors parties to the Prepetition Senior Loan Documents are in default of their debts and obligations under the Prepetition Senior Loan Documents.

---

[2] For purposes of this Order, "Prepetition Secured Obligations" means all amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Senior Loan Documents, including, without limitation, principal, accrued and unpaid interest (including at the default rate), premiums, any reimbursement obligations (contingent or otherwise), any fees, costs, charges, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition Senior Loan Documents.

C. *Need for Use of Cash Collateral*. Based on the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of Cash Collateral. The Debtors' ability to maintain business relationships with vendors, suppliers and customers, pay their employees, satisfy working capital and operational needs and otherwise finance their operations is essential to the Debtors' continued viability. In addition, based on the record presented at the hearing in respect of the Motion (the "Hearing"): (i) the Debtors' need for use of Cash Collateral is critical and the entry of this Order is necessary to avoid immediate and irreparable harm to the Debtors' estates and the value of their assets; (ii) in the absence of the use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and serious and irreparable harm to the Debtors and their estates would occur; and (iii) the preservation, maintenance and enhancement of the going-concern value of the Debtors are of the utmost significance and importance to a successful reorganization of the Debtors.

D. *Adequate Protection*. The Prepetition Secured Parties are entitled to receive adequate protection as set forth in this Order pursuant to sections 361, and 363 of the Bankruptcy Code, as set forth below, to the extent of diminution in the value of their respective interests in the Prepetition Collateral (including Cash Collateral) in the aggregate (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

E. *Notice*. Requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, and no other notice need be provided for entry of this Order.

F.     *Immediate Entry*.  The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.  This Court concludes that entry of this Order is in the best interests of the Debtors' respective estates and creditors.

Based on the foregoing, and on the record made before this Court at the Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    Approval of Order.  The use of cash collateral is hereby approved, subject to the budgetary and other restrictions contained in this Order.  Any objections to the relief requested in the Motion that have not previously been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    Use of Cash Collateral.  In accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral until March 1, 2019.  Subject to and subordinate to the payment of the Carve-Out, the Prepetition Liens shall continue to attach to the Cash Collateral.  Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge the Prepetition Secured Obligations, or the extent, validity, enforceability or perfected status of the Prepetition Liens.  All rights granted to the Prepetition Secured Lenders survive the conversion or dismissal of one or more of these cases and shall be valid, binding and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any case

under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (collectively, the "Successor Cases"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Order.

3. Adequate Protection. In consideration for the Debtors' use of the Prepetition Collateral (including Cash Collateral), and to protect the Agent and Lenders against the Diminution in Value of their interests in the Prepetition Collateral, the Agent and Lenders shall receive, solely to the extent of any such Diminution in Value, the following adequate protection:

(a) *Prepetition Adequate Protection Liens*. Pursuant to sections 361 and 363(e)) of the Bankruptcy Code, the Agent and Lenders, effective as of the entry of this Order, and subject and subordinate to the payment of the Carve-Out, are hereby granted continuing, valid, binding, enforceable and automatically perfected postpetition liens (the "Prepetition Adequate Protection Liens") on all Prepetition Collateral. Except for with respect to the Permitted Prior Liens, the Prepetition Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition Secured Obligations are paid in full. The Prepetition Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be pari passu with or senior to the Prepetition Adequate Protection Liens.

(b) *Prepetition Superpriority Claim*. Pursuant to section 507(b) of the Bankruptcy Code, the Agent and Lenders, effective as of the entry of this Order, are hereby further granted an allowed superpriority administrative expense claim (the "Prepetition Superpriority Claim"), which shall be junior to the Carve-Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment. The Prepetition Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all Prepetition Collateral. Except for the Carve-Out, the Prepetition Superpriority Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition Secured Obligations owed under the Prepetition Documents are paid in full.

4. Adequate Protection Reservation; Section 507(b) Reservation. The receipt

by the Prepetition Secured Parties of the adequate protection provided pursuant to this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to seek additional forms of adequate protection at any time. Nothing contained herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in connection with any request for additional adequate protection by any party.

5. <u>Approved Budget and Variance Reporting</u>.  The Debtors have prepared and delivered to the Agent and Lenders, and the Agent and Lenders have approved, a budget, a copy of which is filed as ECF No. 43, as orally modified at the hearing solely with respect to the $220,000 line item, (the "<u>Approved Budget</u>"), which reflects the Debtors' anticipated cash receipts and all anticipated necessary and required disbursements for each calendar week during the period from the Petition Date through and including March 1, 2019.  Not later than 4:00 p.m. Central time on the Wednesday of each calendar week commencing with the Wednesday following the second full week after the Petition Date (each such Wednesday, a "<u>Variance Report Date</u>"), the Debtors shall deliver to the Agent and Lenders a line-by-line variance report (each, a "<u>Variance Report</u>") setting forth, in reasonable detail, any differences between actual receipts and disbursements for each such line item for the prior trailing one-week period versus projected receipts and disbursements set forth in the Approved Budget for each such line item for such trailing one-week period (such difference with respect each line item, a "<u>Line-Item Variance</u>") and on a cumulative basis for the period from the Petition Date to the report date, together with a statement certifying compliance with the Budget Covenants (defined below) (with supporting back-up in reasonable detail) and certifying that no disbursements inconsistent with the Budget Covenants have been made.  The Variance Report shall also provide a reasonably detailed explanation for any variance.

Notwithstanding the Approved Budget, without the express written consent of the Lenders, the Borrowers shall not permit any Line-Item Variance (including, for the avoidance of doubt with respect to receipts or disbursements) that is unfavorable to the Lenders, in the sole discretion of the Lenders, to exceed ten (10%) (such permitted variance, the "Permitted Variance" and such limitation, the "Budget Covenant"). Any statutory committee will be provided a copy of any variance reports.

6. Limitation on Use of Cash Collateral. Notwithstanding anything herein to the contrary, no portion of the Prepetition Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or any Committee, in connection with any of the following: (i) the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support or prosecution of any claims, counter-claims, causes of action, adversary proceedings, applications, motions, objections, defenses, or other contested matters against any of the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in each case in their respective capacities as such and with respect to any transaction, occurrence, omission, action or other matter related to any Debtor (including formal discovery proceedings in anticipation thereof) (each, a "Loan Party Claim"), including, without limitation, (a) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations or the Prepetition Liens, (b) investigating or

asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code against the Prepetition Secured Parties, (c) investigating or asserting any so-called "lender liability" claims and causes of action against the Prepetition Secured Parties; and (d) investigating or asserting any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Secured Obligations; (ii) the assertion of any claims or causes of action against the Prepetition Secured Parties, including, without limitation, claims or actions to hinder or delay the assertions, enforcement or realization on the liens securing the Prepetition Secured Obligations in accordance with this Order (including attempting to stay the exercise of any right or remedy described in this Order); (iii) seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the Prepetition Secured Parties hereunder or under the Prepetition Senior Loan Documents, in each of the foregoing cases without such applicable parties' prior written consent; (iv) the payment of any amount on account of any claims arising prior to the Petition Date unless such payments are approved by order of the Court; or (v) any purpose that is prohibited under the Bankruptcy Code; provided, however, that no more than $25,000 in the aggregate of the proceeds of the Cash Collateral may be used by any Committee to investigate any Loan Party Claim.

7. <u>Disposition of Collateral; Application of Proceeds</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral other than in the ordinary course of business and in accordance with the Approved Budget without an order of the Court or the prior written consent of the Agent.

8. <u>Automatic Effectiveness of Liens</u>.  The Adequate Protection Liens shall not be subject to a challenge and shall attach and become valid, perfected, binding, enforceable, non-avoidable and effective liens by operation of law as of the Petition Date without any further action

by the Debtors, or any of the applicable Prepetition Secured Parties, respectively, and without the necessity of executing, filing or recording any financing statements, security agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions (including, for the avoidance of doubt, entering into any deposit account control agreement or taking possession of any collateral) to validate or perfect (in accordance with applicable law) such liens, or to entitle the Prepetition Secured Parties the priorities granted herein. The Agent, in its sole discretion, may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to, or in lieu of, such financing statements, notices of liens or similar statements.

9. **Rights and Remedies Upon Event of Default**. Without further order from this Court, the Agent may declare a default and the Debtors will thereafter be immediately prohibited from further use of Cash Collateral; provided, the Debtors may seek a further order authorizing the use of cash collateral and the Agent and Lenders may seek further relief as a consequence of the Event of Default. It will be an Event of Default if (i) any of these Chapter 11 cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or a trustee or examiner with expanded powers is appointed in any of the chapter 11 cases; (ii) the Debtors fail to comply with a budget covenant; (iii) this Order shall cease to be in full force and effect; (iv) this Court abstains from hearing the chapter 11 cases; or (v) the Debtors otherwise fail to comply with the terms of this Order.

10. **Binding Effect**. The provisions of this Order shall inure to the benefit of the Debtors, the Prepetition Secured Parties and their respective successors and assigns, and shall be

binding upon the Debtors, the Prepetition Secured Parties, and any and all other creditors of the Debtors or other parties in interest and their successors and assigns, including without limitation, any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Order.  Further, upon entry of this Order, the Debtors' stipulations contained in this Order shall be binding on the Debtors.

11. <u>Restrictions on Granting Postpetition Liens; Restrictions on Use of Cash Collateral</u>.  Other than the Prepetition Liens and Permitted Prior Liens, or as otherwise provided in this Order, no claim or lien having a priority superior or *pari passu* with those granted by this Order to the Prepetition Secured Parties shall be granted or permitted.

12. <u>Carve-Out</u>.

(a) As used in this Order, the term "Carve-Out" shall mean the following:

    i. all fees required to be paid, both prior to and after delivery of a Carve-Out Trigger Notice, by the Debtors to the Clerk of the Bankruptcy Court and all statutory fees payable to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate (collectively, the "Statutory Fees");

    ii. all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000;

iii. to the extent allowed by the Bankruptcy Court at any time, all accrued and unpaid fees and expenses incurred by professionals or professional firms retained by the Debtors, their estates, or the Committee pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (other than ordinary course professionals) (collectively, the "Estate Professionals") at any time before the delivery by the Agent of a Carve-Out Trigger Notice (as defined herein), whether such amounts are allowed by the Bankruptcy Court prior to or after delivery of such Carve-Out Trigger Notice (and including amounts incurred but not invoiced prior to the delivery of the Carve-Out Trigger Notice); provided, that, there shall be a dollar-for-dollar reduction of the Carve-Out for any unused retainers (if any) held by or on behalf of the Estate Professionals as of the delivery of the Carve-Out Trigger Notice; and

iv. to the extent allowed by the Bankruptcy Court at any time, all unpaid fees and expenses incurred by the Estate Professionals on or after the day following the date of the delivery by the Agent of the Carve-Out Trigger Notice, in an aggregate amount not to exceed $75,000 for all such professionals (for the avoidance of doubt, not on a professional-by-professional basis); provided, that, without duplication of the above reduction for retainers, there shall be a dollar-for-dollar reduction of the Carve-Out for any unused retainers (if any) held by or on behalf of the Estate Professionals as of the delivery of the Carve-Out Trigger Notice;

provided, further, that any payment or reimbursement made for fees and expenses incurred after the delivery of the Carve-Out Trigger Notice to an Estate Professional shall permanently reduce the Post-Carve-Out Trigger Notice Cap on a dollar-for-dollar basis, and to the extent any payment to an Estate Professional is subsequently disallowed and/or disgorged, the proceeds of any claim against the Estate Professional for amounts so disallowed or disgorged shall constitute Prepetition Collateral (such amount set forth in this clause (iv), the "Post-Carve-Out Trigger Notice Cap").

(b) Notwithstanding the foregoing, no portion of the Carve-Out shall be used for the payment of fees, disbursements, costs or expenses incurred by any Estate Professional to investigate, challenge, object to, contest, or raise any defense to, the validity, security, perfection, priority, extent or enforceability of any amount due under or the liens or claims granted under or in connection with the Prepetition Loan Documents.

(c) As used herein, the term "Carve-Out Trigger Notice" means a written notice delivered by the Agent to counsel to the Debtors, the U.S. Trustee and counsel to any Committee, which notice may be delivered following the occurrence of an Event of Default and stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(d) Upon receipt of the Carve-Out Trigger Notice, the Debtors shall provide notice by email to all Estate Professionals, at the email addresses set forth in each Estate Professional's notice of appearance filed with the Bankruptcy Court (or, if there is no such notice of appearance, at such Estate Professional's last known email address) informing them that such

Carve-Out Trigger Notice has been received and further advising them that the Debtors' ability to pay such Estate Professionals is subject to and limited by the Carve-Out, and the Debtors shall transfer into a segregated account not subject to the control of the Agent or the Lenders (the "Carve-Out Escrow Account") an amount equal to the Post-Carve-Out Trigger Notice Cap. The proceeds of the Carve-Out Escrow Account shall be available only to satisfy the obligations benefitting from the Carve-Out, and the Agent and Lenders shall only have a security interest in any residual interest in the Carve-Out Escrow Account following satisfaction in full of all obligations benefiting from the Carve-Out.

(e) None of the Agent, the Lenders, or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the cases under any chapter of the Bankruptcy Code; instead, the Carve-Out shall be paid from the Prepetition Collateral or its proceeds.

13. <u>Rights of Access and Information</u>. The Debtors shall reasonably cooperate with and authorize their CRO and each of their respective representatives, advisors (including independent certified public accountants, financial advisors and investment bankers), professionals, consultants, agents and/or employees, to reasonably cooperate and consult with and reasonably provide all such information with respect to the businesses, results of operations and financial condition of any of the Debtors to the Agent, the Lenders and the Prepetition Secured Parties as reasonably requested from time to time. In addition, the representatives, advisors, professionals, consultants, agents and/or employees of the Agent, the Lenders and the Prepetition Secured Parties shall be afforded reasonable access to the Debtors' premises during normal business hours and without unreasonable interference with the proper operation of the Debtors'

businesses and their books and records in accordance with this Order and the Prepetition Senior Loan Documents.

14. <u>Entry of this Order; Waiver of Stay</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

15. <u>Retention of Jurisdiction</u>.  This Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with this Order.

16. The Court has issued multiple orders on this date that reference a "DIP Order".  Although this is not actually a DIP Order, all such references shall be interpreted to refer to this Order and all references to the DIP Agent shall be to the Agent and any ambiguity arising out of any other similar reference shall be interpreted in a manner consistent with this Order.

Signed:

February 06, 2019

_____
Marvin Isgur
United States Bankruptcy Judge

NY 76616187v5
57251/0001-15168033v1
NY 77520212
4823-6545-4983.1