**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BURKHALTER RIGGING, INC., *et al.*,[1] | § | Case No. 19-30495 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT**
**AMONG SELLER AND BUYER, (II) AUTHORIZING THE SALE OF**
**SUBSTANTIALLY ALL THE ASSETS OF THE DEBTORS FREE AND**
**CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS,**
**(III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION**
**THEREWITH AND, (IV) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 115] (the "Sale Motion")[2] of the above-captioned debtors

and debtors-in-possession (collectively, the "Debtors"), seeking, among other things, the entry of

an order (the "Sale Order"), pursuant to sections 105, 363, and 365 of title 11 of the United States

Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"):  (i) approving the Asset Purchase Agreement, (ii) authorizing

the sale of the Assets free and clear of all liens, claims, encumbrances, and interests; (iii)

authorizing the assumption and assignment of certain executory contracts and unexpired leases in

connection therewith; and (iv) granting related relief; and the Court having entered its prior order,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, include: Burkhalter Rigging, Inc. (8314); Burkhalter Specialized Transport, LLC (1511); and Burkhalter Transport, Inc. (2096).  The address for all of the Debtors is 2193 Highway 45 South, Columbus, MS 39701.
[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the APA or, if not defined in the APA, the meanings ascribed to such terms in the Sale Motion or Bidding Procedures (each as defined herein), as applicable.

dated March 20, 2019 [Docket No. 179] (the "Bidding Procedures Order"), approving bidding procedures to govern the sale and auction of the Assets (the "Bidding Procedures") and granting certain related relief; and Barnhart Crane and Rigging Co. (the "Buyer") having submitted the highest and best bid for the Assets, as reflected in the Asset Purchase Agreement ("APA"); and the Court having conducted a hearing on the Sale Motion (the "Sale Hearing") on May 20, 2019, at which time all creditors and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (a) the Sale Motion and the exhibits thereto; (b) that certain Amended Asset Purchase Agreement, dated as of May 28, 2019, by and among the Debtors as sellers (the "Sellers"), and the Buyer, as may be amended pursuant to the terms thereof and this Sale Order (the "APA"), a copy of which is attached hereto as **Exhibit A**, pursuant to which the Debtors have agreed, among other things, to sell the Assets to the Buyer (except for the Excluded Assets, as defined in Section 1.2 of the APA), including the Assigned Contracts and NDAs that will be assumed and assigned to Buyer, on the terms and conditions set forth in the APA (collectively, the "Sale Transaction"); (c) the Bidding Procedures Order and the record of the hearing before the Court on March 18, 2019 at which the Bidding Procedures Order was approved; and (d) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due notice of the Sale Motion, the APA, the Bidding Procedures Order, the Auction, and the proposed form of this Sale Order (the "Proposed Sale Order") having been provided in accordance with the Bidding Procedures Order; and all objections to the Sale Motion having been withdrawn, resolved, or overruled as provided in this Sale Order; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest in these chapter 11 cases; and

2

upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation thereon; and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction to decide the Sale Motion and jurisdiction over the Sale Transaction and the property of the Debtors' estates, including the Assets, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.  Venue of these chapter 11 cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.      **Statutory and Rule Predicates**.  The statutory and other legal predicates for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004, 6006, 9007, and 9014.

D.      **Notice and Opportunity to Object**.  As evidenced by the certificates of service filed with the Court, due, proper, timely, adequate, and sufficient notice of, and a fair and reasonable opportunity to object to and to be heard with respect to the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, the Sale Transaction, the sale of the Assets free and clear of any Interests (as hereinafter defined), the Proposed Sale Order, and the assumption and

3

assignment of the executory contracts and unexpired leases to be assumed and assigned to Buyer at the Closing, as defined in the APA, pursuant to this Sale Order, has been provided by the Debtors, as required by sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and in compliance with the Bidding Procedures Order to all Persons entitled to such notice, including, but not limited to, the following:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) counsel for Metropolitan Partners Group Administration LLC, the administrative agent under the Debtors' senior loan and security agreement; (f) the state attorneys general for states in which the Debtors conduct business; (g) all parties to Assigned Contracts; (h) all entities known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in the Assets; (i) all affected federal, state, and local regulatory and taxing authorities; (j) all parties known or reasonably believed to have expressed interest in the Assets; (k) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"); (l) all of the Debtors' known creditors (for whom identifying information and addresses are available to, or reasonably attainable by, the Debtors); and (m) any party that has requested notice pursuant to Bankruptcy Rule.  Such notice was good, sufficient, and appropriate under the circumstances, and complied in all respects with the Bidding Procedures Order.  No other or further notice of the foregoing is required.  With respect to Persons in interest whose identities could not be reasonably ascertained by the Debtors, the Notice of Auction as prescribed by the Bidding Procedures Order, was sufficient and reasonably calculated to notice such Persons under the circumstances.

4

E.    **Disclosures**.  The disclosures made by the Debtors in the Sale Motion, the Sale Notice, and related notices and documents filed with the Court concerning the APA, the Bidding Procedures Order, the hearing to consider approval of the Sale Motion, the Sale Transaction, and the Sale Hearing were good, complete, and adequate.

F.    **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rule of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court finds that there is no just reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court, which has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

G.    **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion, the APA, and the Sale Transaction and entering into the APA and any ancillary agreements thereto (the "Related Agreements").  The Debtors' entry into and performance under the APA and Related Agreements (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their creditors and stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for the Sale Transaction include, but are not limited to, the following:  (a) the APA constitutes the highest or best offer received for the Assets; (b) the APA presents the best opportunity to maximize the value of the Assets on a going-concern basis and avoid decline and

5

devaluation of the Assets; (c) unless the Sale Transaction and all of the other transactions contemplated by the APA are concluded expeditiously, as provided for pursuant to the APA, recoveries to the Debtors' creditors may be materially diminished; and (d) the value of the Debtors' estates will be maximized through the sale of the Assets pursuant to the APA.

H.    **Compliance with Bidding Procedures**.    The Bidding Procedures were substantively and procedurally fair to all parties.  The Debtors, the Buyer, and their respective counsel and other advisors have complied with the Bidding Procedures and Bidding Procedures Order in all respects.

I.    **Successful Bidder**.    The Debtors determined, in accordance with their business judgment and in consultation with the Committee and Metropolitan Partners Group Administration LLC, that Buyer's APA was the highest and best Qualified Offer (as defined in the Bidding Procedures) for the Assets.  As a result, the Debtors declared Buyer the Prevailing Bidder (as defined in the Bidding Procedures) at Auction with respect to the Assets.

J.    **Highest and Best Value**.    The Debtors and their advisors and professionals engaged in a robust and extensive marketing and sale process, both prior to the Petition Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures.  The Debtors conducted a fair and open sale process.  The sale process, the Bidding Procedures, and the Auction were non-collusive, duly noticed and provided a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Assets.  The process conducted by the Debtors pursuant to the Bidding Procedures resulted in the highest or best value for the Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

6

K.     **Consideration**.   The consideration to be paid by the Buyer under the APA (i) constitutes fair, adequate, and reasonable consideration for the Assets; (ii) is the highest or best offer for the Assets; (iii) will provide a greater recovery for the Debtors' estates and creditors on account of the Assets than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and other laws of the United States, any state, territory, or any other applicable jurisdiction with laws substantially similar to the foregoing.

L.     **No Successor or Other Derivative Liability**.   By consummating the Sale Transaction pursuant to the APA, Buyer is not a mere continuation of any of the Debtors or any of the Debtors' estates, and there is no continuity, no common identity, and no continuity of enterprise between Buyer and any Debtor.  Buyer is not holding itself out as a continuation of any Debtor. Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Buyer and the Debtors.  Neither Buyer nor any of its affiliates (as defined by section 101 of the Bankruptcy Code, "Affiliates") and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any the Debtors (or any Affiliates thereof) and/or any Debtors' estates, except as expressly provided in the APA.  The sale and transfer of the Assets to the Buyer, including the assumption by the Debtors and assignment, transfer and/or sale to the Buyer of the Assigned Contracts, will not subject the Buyer to any liability (including any successor liability) with respect to the operation of the Debtors' business prior to Closing or by reason of such transfer, except that, upon Closing, the Buyer shall become liable for the applicable Assumed Liabilities as limited by the APA.

7

M.    **No Sub Rosa Plan**.  The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization of the Debtors.  The Sale Transaction does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities.

N.    **Good Faith; No Collusion**.  The Debtors, the Buyer, and their respective counsel and advisors have negotiated, proposed and entered into the APA, Related Agreements, and each of the transactions contemplated therein in good faith, without collusion and from arm's-length bargaining positions.  The Buyer is a "good faith purchaser" and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  The Buyer has proceeded in good faith in all respects.  Specifically, (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Assets; (ii) the Buyer complied with the provisions of the Bidding Procedures Order; (iii) the Buyer's bid was subjected to competitive Bidding Procedures as set forth in the Bidding Procedures Order; (iv) Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (v) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate.  The sale price in respect of the Assets was not controlled by any agreement among potential bidders, and neither the Debtors nor the Buyer have engaged in collusion or any conduct that would cause or permit the APA to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  The APA was not entered into for

8

the purpose of hindering, delaying, or defrauding creditors under the laws of the United States, any state, territory, possession, or the District of Columbia. The Buyer is not an Affiliate or "insider" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Buyer and the Debtors. The APA does not commit Buyer or its Affiliates to offer employment to any of the Debtors' senior executives.

O.    **Assumption and Assignment Notice**. As evidenced by the certificates of service filed with the Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served, prior to the Sale Hearing, the Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases (the "Assumption and Assignment Notice"), which provided notice of the Debtors ability to assume and assign the Assigned Contracts and of the related proposed Cure Costs upon each Contract Counterparty to the Assigned Contracts. The service of the Assumption and Assignment Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Assigned Contracts. All Contract Counterparties have had a reasonable opportunity to object both to the Cure Costs listed on the applicable Assumption and Assignment Notice and to the assumption and assignment of the Assigned Contracts to the Buyer. No defaults exist in the Debtors' performance under the Assigned Contracts as of the date of this Sale Order other than the failure to pay the Cure Costs or defaults that are not required to be cured.

P.    **Free and Clear Sale**. The Debtors may sell the Assets free and clear of all Interests against any Seller, its estate, or any of the Assets (unless otherwise expressly assumed under, or expressly permitted by, the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Any holders of Interests who did

9

object to the Sale Transaction or Sale Motion that have an interest in the Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5), or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Interests constituting interests in the Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which such holders have an interest, in the same order of priority, and with the same validity, force, and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.  Metropolitan Partners Group Administration LLC, the administrative agent under the Debtors' senior loan and security agreement has consented to the sale of the Assets to the Buyer pursuant to the APA and this Sale Order free and clear of any Interests against the Assets, and Metropolitan Partners Group Administration LLC's Interests in the Assets shall attach to the proceeds of the Sale Transaction ultimately attributable to the property in which Metropolitan Partners Group Administration LLC had an interest, in the same order of priority, and with the same validity, force, and effect that Metropolitan Partners Group Administration LLC had prior to the Sale Transaction, subject to any defenses of the Debtors.

Q.    **Buyer's Reliance on Free and Clear Sale**.  The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Assets were not free and clear of all Interests, or if the Buyer would, or in the future could, be liable for any such Interests, including, as applicable, certain liabilities related to the Business that will not be assumed by the Buyer, as described in the APA.  A sale of the Assets other than one free and clear of all Interests would adversely impact the Debtors, their estates, and their creditors, and would yield substantially less value for the Debtors' estates, with less certainty than provided under the Sale Transaction.  The total consideration to be provided under the APA reflects the

10

Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Assets free and clear of all Interests (including, without limitation, any potential derivative, vicarious, transferee, or successor liability Interests).

R.     **Assumption and Assignment of Assigned Contracts**.    The assumption and assignment of the Assigned Contracts are integral to the APA, are in the best interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Assigned Contracts (i) are necessary to sell the Assets to the Buyer, (ii) limit the losses suffered by Contract Counterparties, and (iii) maximize the recoveries to other creditors of the Debtors by avoiding claims against the Debtors' estates that would arise from the Debtors' rejection of the Assigned Contracts.  Any Contract Counterparty to any Assigned Contract that has not actually filed with the Court an objection to such assumption or to such assignment as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to such assumption and assignment.

S.     **Cure Notice**.  The Debtors filed and properly served the Notice of Assumption and Assignment [Docket No. 219] and supplemental cure notices [Docket Nos. 245 and 293] (as supplemented, amended, and revised, the "Cure Notice") pursuant to which the Debtors identified the dollar amount, if any, that the Debtors assert is necessary to be paid to cure all defaults, if any, under their executory contracts and unexpired leases based on the Debtors' books and records (the "Asserted Cure Amount").  Contract Counterparties to the Debtors' executory contracts and unexpired leases were required to file objections (each, a "Cure Objection"), if any, to the Asserted Cure Amount by no later than 5:00 p.m. (prevailing Central Time) on April 19, 2019, or within

11

fourteen (14) days of a supplemental cure notice.  The Cure Notice provided that in the absence of timely-filed Cure Objection, the cure costs set forth in the Cure Notice (each, a "Cure Cost" and, collectively, the "Cure Costs") would be controlling and fixed, notwithstanding anything to the contrary in any Assigned Contract, or any other document, and the Contract Counterparty to any Assigned Contract shall be deemed to have consented to the Cure Costs set forth in the Cure Notice.

T.    **Adequate Assurance of Future Performance**.    Pursuant to the Bidding Procedures Order, Contract Counterparties to Assigned Contracts also were required to file any objections to Buyer's ability to provide adequate assurance of future performance as contemplated under sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(1) of the Bankruptcy Code ("Adequate Assurance Objections"), by no later than April 19, 2019.    Contract Counterparties to Assigned Contracts that failed to timely file an Adequate Assurance Objection are forever barred from objecting to the assumption and assignment of Assigned Contracts on the grounds of a failure to provide adequate assurance of future performance.  Based on evidence adduced at the hearing and based on the record in these chapter 11 cases, to the extent necessary, the Debtors have satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assigned Contracts to the extent provided under the APA and:  (i) the Buyer will cure, in accordance with the terms set forth in this Sale Order and the APA, any default existing prior to the date of the assumption the applicable Assigned Contract, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) Buyer has provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default

12

prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; (iii) Buyer has provided adequate assurance of future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code based on the evidence adduced at the Sale Hearing.  With respect to each of the Assigned Contracts, the Debtors have met all requirements under section 365(b) of the Bankruptcy Code.  Accordingly, the Assigned Contracts may be assumed by the Debtors and assigned to the Buyer as provided under the APA. The assumption and assignment of each Assigned Contract is approved notwithstanding any provision in such Assigned Contract or other restrictions prohibiting its assignment or transfer.

U.    **Validity of the Transfer**.  As of the Closing, the transfer of the Assets to the Buyer will be a legal, valid, and effective transfer of the Assets, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Assets, free and clear of all Interests.   The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.  The Debtors (i) have full power and authority to execute the APA and the Related Agreements and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action(s) of the Debtors; (ii) have all of the power and authority necessary to consummate the transactions contemplated by the APA and Related Agreements; and (iii) upon entry of this Sale Order, other than any consents identified in the APA, need no consent or approval from any other Person to consummate the Sale Transaction.

13

V.     **Assets Are Property of the Estates**.  The Assets constitute property of, and good title is vested in, the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and rightful owners of the Assets with all right, title, and interest to transfer and convey the Assets to the Buyer, and no other Person has any ownership right, title, or interests therein.

W.     **Valid and Binding Contract**.  The APA is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms.  The APA, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.  Other than claims arising under the APA, the Debtors agree and acknowledge that they have no claims against the Buyer.

X.     **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the Assets must be approved and consummated promptly in order to preserve the value of the Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the APA. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Sale Order.

Y.     **Single Integrated Transaction**.  The APA and Sale Transaction must be approved and the Closing must occur to preserve the value of the Debtors' assets.  Entry of this Sale Order approving the APA and all provisions thereof is a necessary condition precedent to Buyer

14

consummating the Sale Transaction.  The transactions contemplated by the APA are inextricably linked technically and economically and collectively constitute a single, integrated transaction.

Z.      **Legal and Factual Bases**.  The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      **Motion is Granted**.  The Sale Motion and the relief requested therein (to the extent not previously granted by this Court pursuant to the Bidding Procedures Order or otherwise) is granted and approved as set forth herein.

2.      **Objections Overruled or Otherwise Resolved**.  All objections, if any, to the Sale Motion or the relief requested therein that have not been withdrawn with prejudice, waived or resolved and settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.

3.      **Notice**.  Notice of the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, the Sale Transaction, the sale of the Assets free and clear of any Interests, the assumption and assignment of the Assigned Contracts, and the Proposed Sale Order was adequate, reasonable, appropriate, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4.      **Purchase Price**.  The consideration provided by Buyer pursuant the APA:  (i) is fair and adequate; (ii) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act, the Uniform

15

Fraudulent Conveyance Act, and similar laws); and (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative.

5. **Approval of the APA**. The APA, all transactions contemplated therein (including, but not limited to, all Related Agreements contemplated thereby) and all of the terms and conditions thereof are hereby approved as a valid exercise of the Debtors' business judgment. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the APA and all Related Agreements as and when due thereunder without further order of the Court. The failure specifically to include any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA (including, but not limited to, all Related Agreements contemplated thereby) be authorized and approved in its entirety.

**Sale and Transfer of Assets**

6. Pursuant to Sections 105(a), 363(b), and 365 of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized and empowered, without further order of the Court, to take any and all actions necessary or appropriate to: (i) consummate and close the Sale Transaction pursuant to and in accordance with the terms and conditions of the APA; (ii) transfer and assign all right, title, and interest in and to all Assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the APA; and (iii) execute and deliver, perform under, consummate, and implement the APA and all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale Transaction, including any Related Agreements, or as may be reasonably

16

necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.  The Assets shall be transferred to the Buyer, and upon Closing, such transfer shall (a) be valid, legal, binding, and effective; and (b) vest the Buyer with all right, title, and interest of the Debtors in and to the Assets.  Neither Buyer nor Debtors shall have any obligation to proceed with a Closing under the APA until all conditions precedent to its obligations to do so have been met, satisfied, or waived.  The Debtors shall not have any right to set-off or recoup amounts due to Buyer pursuant to the APA by any amounts which may be owed by Buyer to the Debtors pursuant to any other agreement or order.

7.      All Persons that are currently in possession of any or all of the Assets are hereby directed to surrender possession of such Assets to the Buyer as of the Closing.  To the extent required by the APA, the Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all Persons that are presently, or on the Closing Date may be, in possession of any or all of the Assets will surrender possession of such Assets to either (i) the Debtors before the Closing Date or (ii) the Buyer on or after the Closing Date.

8.      All Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to the Buyer in accordance with the APA and this Sale Order; provided that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

9.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

10.     To the maximum extent available under applicable law, and to the extent provided for under the APA, the Buyer shall be authorized, as of Closing Date, to operate under any license, permit, registration, application, and governmental authorization or approval of the Debtors with respect to the Assets and, to the maximum extent available under applicable law, and to the extent provided for under the APA, all such licenses, permits, registrations, applications, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date.  All existing licenses or permits applicable to the Assets shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Assets sold, transferred, assigned, or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction.

11.     On the Closing Date, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Assets under the APA, transferring good and marketable, indefeasible title and interest in and to all of the Assets to the Buyer.

12.     Upon the Closing of the Sale and the actual receipt by Seller of the Closing Cash Payment pursuant to the APA and this Order, each creditor of the Seller is authorized to execute such documents and take all other action as may be necessary to release its liens on or security interest in the Assets, as may have been recorded or may otherwise exist.

18

**Transfer of Assets Free and Clear or Interests**

13.     Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to and except as otherwise set forth in the APA, the Assets shall be transferred to Buyer free and clear of all encumbrances, claims, interests, and liens, including the Retained Liabilities, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities (under any multiemployer pension plans or otherwise) or liabilities under any collective bargaining agreement or labor practice agreement, retiree healthcare or life insurance claims or claims for taxes of or against the Debtors, any claims under, or trusts or liens created by federal or state law, and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof or the District of

19

Columbia), whether arising prior to or subsequent to the Petition Date, of the Debtors or any of the Debtors' predecessors or Affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities and Permitted Encumbrances) (collectively, the "Interests"), with all such Interests to attach to the proceeds of the Sale Transaction in the order of their priority, including, for the avoidance of doubt, Metropolitan Partners Group Administration LLC's Interests, with the same validity, force, and effect that they now have as against the Assets, subject to any claims and defenses the Debtors may possess with respect thereto.  Without limiting the generality of the foregoing, "Interests" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to (in each case, other than Assumed Liabilities and Permitted Encumbrances):  (i) any labor agreements or any of the employee benefit plans, including any Interests related to unpaid contributions or current or potential withdrawal or termination liability, (ii) any of the Debtors' collective bargaining agreements, (iii) the Worker Adjustment and Retraining Notification Act of 1988, as amended, or other comparable state or local law ("WARN"), (iv) any of the Debtors' current and former employees (v) any and all Claims arising through the Closing Date of any governmental unit for taxes, including but not limited to any FICA and federal withholding taxes, state withholding taxes, state unemployment taxes, federal unemployment taxes and any other payroll related tax.  Those holders of Interests who did not object (or who ultimately withdrew their objections, if any) to the

20

Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object that have an interest in the Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Interests that constitute interests in the Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors. Nothing herein shall be deemed or construed as a ruling or determination by this Court that the Assumed Liabilities encumber the Assets.

14.     Except to the extent included in Assumed Liabilities or Permitted Encumbrances, or to enforce the APA, all persons and entities (and their respective successors and assigns), including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, governmental units, lenders, parties to executory contracts and unexpired leases, Contract Counterparties, customers, licensors, litigation claim ants, employees and former employees, dealers and sale representatives, pension plans, labor unions, trade creditors, and any other creditors holding Interests against the Debtors or the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the transfer of the Assets to Buyer, or the Debtors' businesses prior to the Closing, hereby are forever barred, estopped, and permanently enjoined from asserting any Interests relating to the Assets or the

21

transfer of the Assets against Buyer and its Affiliates, successors, designees, assigns, or property, or the Assets transferred to Buyer, including, without limitation, taking any of the following actions with respect to or based on any Interest relating to the Assets or the transfer of the Assets (other than Assumed Liabilities): (i) commencing or continuing in any manner any action or other proceeding against Buyer, its Affiliates, successors or assigns, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its Affiliates, successors or assigns, as sets, or properties; (iii) creating, perfecting, or enforcing any Interest against Buyer, its successors or assigns, assets or properties; (iv) asserting an Interest as a setoff, right of subrogation or recoupment of any kind against any obligation due Buyer or its successors or assigns; (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof; or (vi) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Sale Transaction. No such persons or entities shall assert or pursue against Buyer or its Affiliates, successors or assigns any such Interest. For the avoidance of doubt, Buyer shall not be liable for any Interests, liabilities, costs, expenses, or requests for reimbursement relating to events that occurred after the Petition Date but prior to the Closing Date, nor relating to liabilities or obligations that accrued prior to the Closing Date but did not become due and payable until after such Closing Date (including, without limitation, real estate taxes and any other taxes, common area maintenance, insurance, utilities, percentage rent, indemnification obligations, and other charges), with the Debtors retaining responsibility to pay or address all such Interests. The reconciliation of such amounts owed shall be calculated in accordance with the terms of the APA.

15.     This Sale Order (i) shall be effective as a determination that, as of the Closing, all Interests have been unconditionally released, discharged, and terminated as to the Buyer and the Assets, and that the conveyances and transfers described herein have been effected, provided that Metropolitan Partners Group Administration LLC's Interests in the Assets shall attach to the proceeds of the Sale Transaction ultimately attributable to the property in which Metropolitan Partners Group Administration LLC had an interest, in the same order of priority, and with the same validity, force, and effect that Metropolitan Partners Group Administration LLC had prior to the Sale Transaction, subject to any defenses of the Debtors; and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Assets free and clear of all Interests, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, and other interests against the Assets recorded prior to the date of this Sale Order.  A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, and other interests against the Assets recorded prior to the date of this Sale Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and Related Agreements.

23

16.     As of and after the Closing: (i) each of the Debtors' creditors is hereby authorized to execute such documents and take all other actions as may be necessary to release its Interests in the Assets (if any) as such Interests may have been recorded or may otherwise exist; and (ii) any Asset that may be subject to a statutory or mechanic's lien shall be turned over and such liens shall attach to the proceeds of the Sale Transaction in the same priority they currently enjoy with respect to the Assets.

17.     Following the Closing, no holder of any Interest shall interfere with the Buyer's title to or quiet use and enjoyment of the Assets based on or related to any such Interest, or based on any actions the Debtors may take in these chapter 11 cases.

18.     If any Person that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests against or in the Debtors or the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests that the Person has with respect to the Debtors or the Assets or otherwise, then with regard to the Assets that are purchased by the Buyer pursuant to the APA and this Sale Order, (i) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to the Assets; and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests against the Assets; provided that, notwithstanding anything in this Sale Order or the APA to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the

24

4818-7144-2569.17

provisions of this Sale Order.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.  For the avoidance of doubt, upon consummation of the Sale Transaction as set forth in the APA, Buyer is authorized to file termination statements, lien terminations, releases, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Sale Order under section 363 and the related provisions of the Bankruptcy Code.

**No Successor or Other Derivative Liability**

19.      Buyer and its Affiliates, and their respective successors and assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be deemed or considered to (i) be a legal successor, or otherwise be deemed a successor to any of the Debtors or their estates; (ii) have, *de facto* or otherwise, merged with or into any of the Debtors or their estates; (iii) have a common identity with the Debtors; (iv) have a continuity of enterprise with the Debtors; or (v) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses, or operations, in each case, by any law or equity, and the Buyer has neither assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Assumed Liabilities. Except as expressly set forth in the APA, the Buyer and its Affiliates, and their respective successors and assigns, members, partners, principals and shareholders (or equivalent), or the Assets, shall have no (a) liability or responsibility for any claim against the Debtors or against an insider of the Debtors; (b) liability or responsibility with respect to any Interests or Excluded Liabilities and shall not be required to satisfy the same in any manner, whether at law or in equity,

25

whether by payment, setoff or otherwise, directly or indirectly; (c) liability or responsibility to the Debtors except as is expressly set forth in the APA; or (d) successor, transferee, or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation, or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other governmental authority fees, contributions, or surcharges, in each case, arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Assets prior to the Closing Date or arising based on actions of the Debtors or their Affiliates taken after the Closing Date.

20.     Without limiting the effect or scope of the foregoing, as of the Closing (except as expressly set forth in the APA), the Buyer and its successors and assigns shall have no liability for any Interests, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature, or character whatsoever, by reason of any theory of law or equity, including, without limitation, Interests arising under (i) any employment or labor agreements, or the termination thereof; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of or related to any of the Debtors or any Debtor's Affiliates or predecessors or any current or former employees of any of the foregoing, including, without limitation, the Employee Plans and any participation or other agreements related to the Employee Plans, or the termination of any of the foregoing; (iii)

26

the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; and (v) any employee, workers' compensation, occupational disease, or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA; (b) the Fair Labor Standards Act; (c) Title VII of the Civil Rights Act of 1964, as amended; (d) the Federal Rehabilitation Act of 1973; (d) the National Labor Relations Act; (e) WARN; (f) the Age Discrimination in Employment Act, as amended; (g) the Americans with Disabilities Act; (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended; (i) the Multiemployer Pension Plan Amendments Act of 1980; (j) state and local discrimination laws; (k) state and local unemployment compensation laws or any other similar state and local laws; (1) state workers' compensation laws; (m) any other state, local, or federal employee benefit laws, regulations, or rules relating to wages, benefits, employment, or termination of employment with any of the Debtors or their predecessors; (n) any antitrust laws; (o) any product liability or similar laws, whether state, federal, or otherwise; (p) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (q) any bulk sales or similar laws; (r) any federal, state, or local tax statutes, regulations, or ordinances, including, without limitation, the Internal Revenue Code; and (s) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory, or any other theory of or related to successor liability, in each case whether known or unknown as of the Closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to,

27

the Assets, the APA or the Assigned Contracts except as otherwise set forth in this Sale Order or the APA.

**Assumption and Assignment of Assigned Contracts**

21.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, Debtors' assumption and assignment to Buyer, and Buyer's assumption, on the terms set forth in the APA of the Assigned Contracts is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

22.     Subject to and conditioned upon the occurrence of the Closing, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign the Assigned Contracts to the Buyer free and clear of all Interests, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer as provided in the APA.

23.     Upon Closing, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and to the Assigned Contracts and, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts pursuant to section 365(k) of the Bankruptcy Code.  The assumption by the Debtors and assignment to the Buyer of the Assigned Contracts shall not be a default under or constitute a termination of any such Assigned Contract.

24.     Buyer has provided adequate assurance of future performance for the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

25.     All Cure Costs shall be determined in accordance with the Bidding Procedures Order and paid in cash by the Buyer in accordance with the terms of the APA at Closing.  Payment

28

of the Cure Costs by the Buyer shall (i) be in full satisfaction and cure of any and all defaults under the Assigned Contracts, whether monetary or non-monetary; and (ii) compensate Contract Counterparties for any actual pecuniary loss resulting from such defaults.  Each Contract Counterparty is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Buyer, their respective Affiliates, successors, or assigns, or the property of any of them, any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed, or arising by reason of the Closing.  Neither the Buyer nor any successor of the Buyer shall be responsible for or have and Interests or obligations arising out of any contracts, agreements, or understandings that are not Assigned Contracts after the Closing (except as specifically provided by the APA).  Nothing in this Sale Order shall affect the rights of the Buyer, to the extent such rights are provided in the APA, to add or remove any Assigned Contracts to or from the list of Assigned Contracts set forth in APA in accordance with the terms thereof.

26.    No Cure Objections were timely filed with respect to the Assigned Contracts listed on **Exhibit B** attached hereto.  The Cure Costs for the contracts listed on Exhibit B are hereby fixed at the amounts set forth thereon, and Contract Counterparties to such Assigned Contracts are forever bound by such Cure Costs.  Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, Buyer shall pay to the applicable Contract Counterparty the Cure Costs relating to any Assigned Contracts on Exhibit B on the Closing Date.  Upon payment of such Cure Costs as provided for herein, the Contract Counterparties to such Assigned Contracts are hereby enjoined from taking any action against Buyer or the Assets with respect to any claim for cure.

29

27.     Pursuant to sections 365(f)(1) and (3), the Assigned Contracts shall be transferred to, and effect for the benefit of, the Buyer in accordance with their respective terms, including all obligations of the Buyer as the assignee of the Assigned Contracts, notwithstanding any provision in any Assigned Contract or under applicable law (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

28.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any defaults, cross-defaults, breach, claim, pecuniary loss, rent accelerations, escalations, rent increase, assignment fees, increases or any other fees charged to the Buyer or the Debtors existing as of the date of assumption of the Assigned Contracts or as a result of the assumption or assignment of the Assigned Contracts on Closing.

29.     Upon the Debtors' assignment of Assigned Contracts to the Buyer under the provisions of this Sale Order, no default shall exist under any Assigned Contracts, and no Contract Counterparty to any Assigned Contracts shall be permitted to declare a default by any Debtor or the Buyer or otherwise take action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract. Any provision in an Assigned Contract, other document, or under applicable law that prohibits or conditions the assignment or sublease of such Assigned Contract (including, without limitation, the granting of a lien therein) or allows the relevant Contract Counterparty to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force or effect. The failure of the Debtors or the Buyer to enforce at any time one or more terms

30

or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Contract. Any party having the right to consent to the assumption or assignment of any Assigned Contracts that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

30.     No broker or similar party has a claim to any brokerage fee, commission, or similar right to payment from the proceeds of the Sale Transaction as a result of having negotiated the APA on behalf of, or for, the Debtor or the Buyer.  For the avoidance of doubt, this provision does not apply to NTA-Riverbend or any other professional retained by the Debtors' estates.

31.     **Insurance Proceeds**.  If, following the Effective Date and on or before the Closing Date, any of the Equipment set forth on the attached Exhibit A-1 is materially damaged or destroyed such that a claim arises to casualty insurance proceeds, the Buyer will be entitled to receive casualty insurance proceeds payable to Sellers due to such damage or destruction up to the value ascribed to such Equipment on Exhibit A-1, if any, and Sellers will assign such proceeds (or the right to receive such proceeds) to Buyer, and Buyer will be entitled to cause Sellers to claim, under Sellers' applicable insurance policies for all casualty insurance proceeds payable to Sellers in respect of the Equipment acquired by Buyer at Closing due to such damage or destruction.  For the avoidance of doubt, the Sellers shall be entitled to any casualty insurance proceeds in excess of the value ascribed to such Equipment on Exhibit A-1.

32.     **Chubb Insurance Contracts**.  Notwithstanding anything to the contrary in the Sale Motion, the Bidding Procedures Order, the APA, any Assumption and Assignment Notice, this Sale Order, any Related Agreement or any document related to any of the foregoing, (i) none of the insurance policies or any related agreements (collectively, the "Chubb Insurance Contracts")

31

issued or entered into by ACE American Insurance Company, Westchester Surplus Lines Insurance Company, ACE Indemnity Insurance Company, Westchester Fire Insurance Company, and/or their respective affiliates (collectively, and with each of their successors, "Chubb") or any rights, benefits, claims, rights to payments and/or recoveries under the Chubb Insurance Contracts, shall be included among the Assigned Contracts or the Assets or otherwise transferred in any way; and (ii) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts, provided, however, that to the extent any claim seeking insurance policy proceeds under any insurance policies included in the Chubb Insurance Contracts arises with respect to casualty losses occurring after the Effective Date and on or before the Closing Date in connection with the Equipment set forth on Exhibit A-1 of the APA, the Debtors may pursue such claims for such insurance proceeds in accordance with the terms of the insurance policies included in the Chubb Insurance Contracts, and, if applicable turn over to the Buyer any proceeds in respect of such claims in accordance with paragraph 31 of this Order (each, a "Proceed Turnover"); provided, further, however, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or have any liability related to a Proceed Turnover.

33.     **Statutory Mootness**.   The transactions contemplated by the APA and Related Agreements are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Assets or the assignment of Assigned Contracts to the Buyer, free and clear of Interests, unless such authorization is duly stayed before the Closing Date pending such appeal.   The Buyer is a good faith purchaser of the Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.   The Debtors and the

32

Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Sale Order.

34.    **No Avoidance of APA**.   Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the APA or Related Agreements to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the APA, Related Agreements, and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the APA, Related Agreements, or the Sale Transaction.

35.    **Waiver of Bankruptcy Rules 6004(b), 6006(d), and 7062**.   Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), and 7062, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction, and the Debtors and the Buyer may close the Sale Transaction as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

36.    **Binding Effect of Sale Order**.   This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Interests (whether known or unknown) against any Debtor, any holders of Interests against or on all or any portion of the Assets, all counterparties to any executory contract or unexpired lease of the Debtors (including any collective bargaining agreement or labor agreement), Buyer and all successors and assigns of Buyer, and any trustees, examiners, or other fiduciary

33

under any section of the Bankruptcy Code, if any, subsequently appointed in any of these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of these chapter 11 cases. The terms and provisions of the APA and this Sale Order shall inure to the benefit of the Debtors, their estates, and their creditors, Buyer, and its respective Affiliates, successors and assigns, and any other affected third parties, including all persons asserting any Interests in the Assets to be sold to Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

37.     **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Sale Order, the APA, or any documents executed in connection therewith, the provisions contained in this Sale Order, the APA, any documents executed in connection therewith shall govern, in that order.  Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, any order confirming such plan, or in any other order of any type or kind entered in these chapter 11 cases (including, without limitation, any order entered after any conversion of any or all of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with, or derogate from the provisions of the APA or the terms of this Sale Order.

38.     **Modification of APA**.   The APA, the Related Agreements, and any other documents or other instruments executed in connection therewith, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment,

or supplement shall not materially change the terms of the APA, Related Agreements, or any documents or other instruments executed in connection therewith.

39.     **Bulk Sales; Taxes**.  No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the APA, the Related Agreements, the Sale Motion, or this Sale Order.  Except as otherwise expressly provided in the APA, all obligations of the Debtors relating to taxes, whether arising under any law, by the APA, or otherwise shall be the obligation of and fulfilled and paid by the Debtors.

40.     **Cooperation**.   The Debtors and all Contract Counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of Buyer, and shall not charge Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.  From time to time, as and when requested by any party, each party to the APA shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in Buyer its right, title and interest in and to the Assets.

41.     **Stay Relief**.   The automatic stay pursuant to section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to (i) allow Buyer to deliver any notice provided for in the APA and any Related Agreements; and (ii) allow Buyer to take any and all actions permitted under the APA and any Related Agreements in accordance with the terms and conditions thereof.  Except to the extent specifically provided for in this Sale

35

Order, nothing in this Sale Order shall modify, lift, or in any way affect the automatic stay pursuant to section 362 with respect to the Debtors, their estates or their property.

**Approval of Runner-Up Bidder**

42.     At the conclusion of the Auction, and in accordance with the Bidding Procedures Order, the Debtors selected the Buyer as the Successful Bidder or Purchaser for the Assets and CA Global Partners and Great American Global Partners (collectively, "Great American") as the Runner-Up Bidder, as defined under the Bidding Procedures Order, for the Assets.

43.     The Runner-Up Bidder, as defined in the Bidding Procedures, shall be required to keep its Runner-Up Bid open and irrevocable until the earlier of June 11, 2019 and the closing of the transaction with the Buyer.

44.     Following entry of this Order, if the Buyer fails to consummate the Sale because of a breach or failure to perform on the part of such Buyer, the Debtors shall consummate the Sale with the Runner-Up Bidder / Great American without further order of the Bankruptcy Court.  In such case, the defaulting Buyer's deposit, if any, shall be forfeited to the bankruptcy estates, and the Debtors specifically reserve the right to pursue any other remedies against Buyer pursuant to the terms of the APA.  The closing date to consummate the transaction with the Runner-Up Bidder shall be no later than June 11, 2019.

45.     If the Debtors consummate the Sale with Runner-Up Bidder, the Runner-Up Bidder shall have all of the rights, protections, and privileges of the Successful Bidder or Buyer for purposes of this Order, and shall be treated in all respects as the Successful Bidder or Buyer under the terms of this Order.

46.     **Access to Excluded Assets**.  For so long as any portion of the Burkhalter Self-Erecting Tower ("BSET") remains on the Real Property, the Buyer and the Landlord, as defined

36

in the APA, hereby authorize and empower each of the Sellers and the Prepetition Lenders, together with each of their respective successors and/or assigns, representatives, agents, employees and invitees (the "Access Parties"), at any time during regular business hours or at such other times as agreed to between the parties and from time to time, upon reasonable notice (which may be by email, phone or other verbal communication) to Buyer and Landlord, to enter upon the Real Property for the purpose of exercising any rights that Access Parties may have with respect to the BSET, including the rights to possess, repossess, prepare and show the same for sale and/or conduct an auction or other sale thereof, move or remove, or otherwise deal with the BSET.  In connection with the foregoing, the Access Parties may advertise and conduct public auctions or private sales of the BSET at the Real Property, in each case without interference by the Buyer and the Landlord or liability of the Access Parties, except that any damage to the Assets or to the Real Property resulting from the removal of the BSET shall be paid by the Sellers and Sellers shall defend and indemnify the Buyer and the Landlord for any reasonable, documented claims for injury or damage (i) arising out of access to the Real Property or (ii) to the Assets as provided in this paragraph 46; provided, however, that Sellers shall have no obligations or liability for any such damage or other claims arising from the acts or omissions of the Buyer, the Landlord and/or their respective representatives, agents, employees and invitees.  If the Access Parties conduct a public auction or private sale of the BSET at the Real Property, the Access Parties shall provide the Buyer and the Landlord with prior written notice of same and use reasonable efforts to hold such auction or sale in a manner which would not unduly disrupt the Buyer's use of the Real Property.  The Buyer and the Landlord hereby release and disclaim any and all liens, security interests, rights and claims of every kind, including any statutory or common law lien, which either party may now or hereafter have with respect to the BSET, including, without limitation, any rights

37

to seize, hold, restrain, levy upon, take possession of, sell or otherwise transfer or dispose of the BSET.  Sellers, in their sole and absolute discretion, at any time may assign all or any portion of their rights under this Section to any person or entity that purchases the BSET from the Sellers.

47.     Notwithstanding anything to the contrary in this Agreement, neither the Sellers nor any successors or assigns thereof shall be required to remove the BSET from the Real Property (and shall be entitled to continue storing it at such location without any additional compensation to the Buyer or the owner of the Real Property) until the date that is the earlier of (a) twelve (12) months after the closing of the sale of the BSET by the Sellers or their successors or assigns,  and (b) fifteen (15) months after the Closing Date.  Sellers, or their respective successors or assigns, in their sole and absolute discretion, at any time may assign all or any portion of their rights under this Section to any person or entity that purchases the BSET from the Sellers or their respective successors or assigns.

48.     **BSET Maintenance**.  Pursuant to, and in furtherance of, Section 1.3(d) of the APA, Buyer agrees to display the BSET in a presentable and saleable form until such time as the BSET is sold and/or removed from the Real Property.  Buyer will not be responsible for any repair, maintenance or insurance cost associated with the BSET except that Buyer shall be responsible for any repair or maintenance costs that arise from gross negligence of the Buyer and/or its representatives, agents, employees and invitees.

49.     **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Sale Order, the APA, Related Agreements, all amendments thereto, and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order, the APA, and Related Agreements, and to enforce the injunctions set forth herein.

Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

### END OF ORDER ###

Submitted and Approved by:

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
**FOLEY GARDERE**
Foley Lardner LLP
2021 McKinney Avenue
Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: mhelt@foley.com

-and-

Jack G. Haake (*pro hac vice*)
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C.  20007-5109
Telephone: (202) 295-4085
Facsimile: (202) 672-5399
Email: jhaake@foley.com
***Counsel for the Debtors and Debtors in Possession***

And

*/s/ E. Franklin Childress, Jr.*
E. Franklin Childress, Jr.
Baker, Donelson, Bearman, Caldwell & Berkowiz, PC
165 Madison Ave., Suite 2000
Memphis, TN 38103
Telephone: (901) 577-2147
***Counsel for Barnhart Crane and Rigging, Co.***

And

4818-7144-2569.17

*/s/ Daniel Ginsberg*
Daniel Ginsberg
Stroock & Stroock & Lavan
180 Maiden Lane,
New York, NY 10038
Telephone: (212) 806-6087
dginsberg@stroock.com
***Counsel for Metropolitan Partners Group Administration, LLC***

And

*/s/ Benjamin Kadden*
Benjamin W. Kadden
601 Poydras St., Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
bkadden@lawla.com
***Counsel for the Official Committee of Unsecured Creditors***

And

*/s/ J. Cal Mayo, Jr.*
J. Cal Mayo, Jr.
Mayo Mallette, PLLC
5 University Office Park
2094 Old Taylor Road, Suite 200
Post Office Box 1456
Oxford, MS 38655
cmayo@mayomallette.com
***Counsel for Delynn Burkhalter***
***and Burkhalter Properties, Inc.***